JASON A. BLACKMAR *vs.* JOHN N. SHARP *et al.*

PROVIDENCE—DECEMBER 18, 1901.

PRESENT : Tillinghast, Rogers, and Douglas, JJ.

(1) *Mechanic's Liens. Mortgages for Future Advances.*

January 17, 1898, A. sold to B. lots 29 and 30 for $600 each. The same day B. executed his note and mortgage securing same to A. in the sum of $2,500 on each lot. No money was paid by either A. or B., the mortgages being given in consideration of the conveyance of the lots and for future advances. At the same time A. entered into written contracts with B. whereby B. agreed to erect a house on each lot and A. agreed to advance the sum of $2,500 on each lot, less the price of the lot, payments to be made as the houses progressed. These mortgages were recorded January 26, 1898, before work was commenced on the houses.

April 7, 1898, A. sold to B. lots 20 and 21 for $700 each, and the same day B. executed his note and mortgage in the sum of $2,500 on each of the lots to C. and delivered the same to A. May 12, 1898, these two latter mortgages were assigned by C. to A., but the transfers were never recorded. No money was paid by B. for the lots, and none was paid by C. for the mortgages nor by A. at the time they were given, the same being given in consideration of the conveyance of the lots and for future advances.

At the time the two mortgages were executed to C. upon lots 20 and 21, A. entered into written agreements with B. which recited the mortgages to C. and the transfer to A., by which contracts B. agreed to erect a house upon each lot and A. agreed to advance the sum of $2,500 upon each lot, less the price of the lot, payments to be made as the houses progressed. These mortgages upon lots 20 and 21 were recorded April 16, 1898, before work was commenced on the houses, but they were not transferred until after such work was commenced. In none of the mortgages did it appear that they were to secure future advances, and in no instance was the written contract recorded.

Upon no one of the lots was any money advanced by A. until after the commencement of the erection of the house upon said lot. In each instance A. advanced the full sum of $2,500, less the price of the lot, but not in accordance always with the terms of the contract, the last payment in each case being anticipated.

January 17, 1900, D. was declared entitled to a lien for work done and materials furnished in constructing sewers for the four houses. D. contracted to build said sewers with B. in October, 1898, commenced work in November, 1898, and finished same November 26, 1898. On the above facts :—

*Held,* that, the mortgages being given not only to secure future advances but also for the purchase price of the lots, they were good in any event from the time they were given to the extent of the purchase price.

*Held,* further, that, as under the agreements between A. and B. it was obligatory upon the mortgagee to make the advances, the mortgages were valid liens therefore, although the advances were made subsequent to the time that the lien of D. attached in the premises.

*Held,* further, that it was not the duty of the mortgagee under said agreements to see to the application of the advances to the construction of the houses.

*Held,* further, that the fact that the advances were not made in strict conformity with the agreements was not a fact that the lienor could take advantage of.

*Held,* further, that it need not appear upon the face of the mortgages that they were for future advances if the extent of the incumbrances could be readily ascertained from the record, and that in such case the agreement under which the advances were made need not be recorded.

*Held,* further, that the consideration for the mortgages given by B. to C. on lots 20 and 21 was the collateral agreement of A. for the advances, and that C. was the resulting trustee for A., who was the equitable owner of the mortgages at all times.

*Held,* further, that as the mortgages to C. were recorded contemporaneously with the deeds, the liens created by them attached at once, and the date of the transfer of the mortgages or the omission to record did not concern D., and that they had priority over the lien of D.

*Held,* further, that A. should be allowed the actual and necessary expenses incurred in his attempted foreclosure proceedings to the time of the injunction.

MECHANIC'S LIEN. Heard on exceptions to report of master. Exceptions overruled.

TILLINGHAST, J. This is a petition for a mechanic's lien, and is now before the court on the petitioner's exceptions to the master's report. The facts in the case are well stated in the master's report, and are as follows, viz. :

On January 17, 1898, the respondents Edward S. Aldrich, William F. Aldrich, Elizabeth E. Andrews, and Abby L. Chesborough sold and deeded to respondent John N. Sharp lots 29 and 30 on the John Andrews plat, situated in the city of Providence on or near Pleasant street, for $600 each. On

the same day said Sharp executed and delivered his nego-
tiable promissory note and mortgage securing same, back to
said grantors in the sum of $2,500 on each lot.

No money was paid by said Sharp for said lots, and no
money was paid by said Edward S. Aldrich and others on
said mortgages at the time they were given, the same being
given in consideration of the conveyance of the lots and for
future advances. The mortgagees at the time said mort-
gages were executed entered into written contracts with
said John N. Sharp, whereby said Sharp agreed to erect a
house upon each of said lots and the mortgagees agreed to
advance the sum of $2,500 upon each lot, less the price of
the lot, payments on account of the same to be made from
time to time, as the houses progressed, in accordance with the
terms of said contracts. These mortgages on lots 29 and 30,
respectively, were recorded January 26, 1898, before work was
commenced upon the houses.

On April 7, 1898, the same grantors, viz., Edward S. Ald-
rich and others, sold and deeded to said John N. Sharp lots
20 and 21, upon the same plat, for $700 each. On the same
day said Sharp executed his negotiable promissory note and a
mortgage securing the same in the sum of $2,500 on each of
said lots to respondent Henry Hoppin, and then and there
delivered the same to the Aldriches. Subsequently, on the
12th day of May, 1898, these two mortgages were assigned
by said Hoppin to said grantors, Edward S. Aldrich and
others, but the transfers were never recorded. No money
was paid by said Sharp for said two lots, and no money
was paid by said Hoppin for said two mortgages, nor by said
Edward S. Aldrich and others therefor at the time said mort-
gages were given, the same being given in consideration of
the conveyance of the lots and for future advances. But at
the time said two mortgages were executed to Henry Hoppin
upon lots 20 and 21, respectively, the said grantors, Edward
S. Aldrich and others, entered into written agreements with
said John N. Sharp, which agreements recited said mort-
gages to Hoppin and the transfer thereof to said grantors,
and by which contracts said Sharp agreed to erect a house

upon each of said lots and said grantors agreed to advance the sum of $2,500 upon each lot, less the price of the lot, payments on account of same to be made from time to time, as the houses progressed, in accordance with the terms of said contracts. These mortgages upon lots 20 and 21, respectively, were recorded April 16, 1898, before work was commenced upon the houses, but the said mortgages were not transferred until after such work was commenced. The four mortgages were given each for the definite sum of $2,500, and in neither does it appear that the mortgage was to secure future advances, and in no instance was the written contract recorded.

In each instance the said Edward S. Aldrich and others have advanced the sum of $2,500, less the price of the lot, but not always just in accordance with the terms of the respective contracts. They have anticipated the last payment, at least, in each instance, since the houses are not even now completed. But the mortgagor and apparent owner of the fee in said four lots, John N. Sharp, has not appeared before the master to object to any violations of the terms of the contracts or to aught else. He came before the master once, and stated that he did not care to be notified of any future meetings. Upon no one of the four lots was any money advanced by the said respondents, Edward S. Aldrich and others, until after the commencement of the erection of the house upon said lot.

The petitioner, Jason A. Blackmar, who, by decree of January 17, 1900, was declared entitled to a lien for work done and materials furnished in constructing sewers for the four houses erected upon said lots 20, 21, 29, and 30 in accordance with the terms of said respective contracts, made his contract to build said sewers with John N. Sharp in October, 1898, commenced work thereon early in November, 1898, and finished same November 26, 1898. The amount of money due said petitioner for constructing said sewers for and upon said lots 20, 21, 29, and 30, as aforesaid, the master finds to be $206.30, which, by agreement of counsel, is to be divided equally between said four lots.

Upon these facts the master found the law applicable to the case to be as follows:

"1.   That the validity of mortgages for future advances is well established, and, when recorded, they have priority over subsequent incumbrances.

"2.   That it need not appear upon the face of the mortgage that it is for future advances if the extent of the incumbrance can be readily ascertained from the record.

"3.   That in such case the agreement under which the advances are to be made need not be recorded.

"4.   That where there is an obligation on the part of the mortgagee to make advances, such mortgage is operative against junior incumbrancers from the date of its record.

"5.   That when the mortgagee is bound to make the advances, such mortgage is valid as against a junior incumbrancer to the extent of advances made within its terms, whether such advances are made before or after the mortgagee has notice of the subsequent lien."

Applying these principles to the case before him, the master found that the said four mortgages now held by Edward Aldrich and others had priority over the petitioner's lien to the amount of $2,500 each, with interest, together with the expenses sustained by the Aldriches in attempting to foreclose the same up to the time when they were enjoined by the court.

Objections to all of said findings of law were duly taken before the master, and it was also stipulated by the parties before him and made part of his report that in filing exceptions to said report neither party should be limited to the objections thereto by him raised before the master.   The petitioner alleges that each and every conclusion of law contained in the master's report, excepting the first, is wrong and erroneous, and he has duly excepted thereto.

From the foregoing statement of the case it will at once be seen that the main question presented for our decision is as to the priority of the incumbrances in question.   That is, does the petitioner's statutory lien, which has been duly

established, take precedence of said mortgages, or do the mortgages take precedence of said lien?

Our statute gives a lien, under certain conditions, for all work done and for all materials used in the construction, erection, or reparation of buildings, etc., which work and materials "have been furnished by any person *before any other lien which shall originate subsequent to the commencement of such erection, construction or reparation on such land.*" Gen. Laws R. I. cap. 206, § 1.

This statute is evidently based upon the principle that vested rights of purchasers or incumbrancers of real estate, and reciprocally the liens of mechanics thereon, cannot be affected by other rights *subsequently* accruing. It is hardly necessary to say that the General Assembly, by mentioning "*subsequent*" liens in said statute, must have had in mind the fact that there might have been *prior* liens which were to retain their preference. In short, the statute in effect plainly provides that the priorities of lienors of whatever class shall be fully protected. *Bassett* v. *Swarts,* 17 R. I. 215. If A., at a given time, holds a valid subsisting mortgage, duly recorded, on land of B., he has a lien on said land by virtue of his contract with B., and nothing which the latter may do, or which any other person outside of A. may do by way of contract or otherwise regarding said land, can take away or prejudice A.'s rights therein. And what is true as to a mortgage lien is equally true as to a mechanic's lien, which is in the nature of a mortgage (*Briggs* v. *Titus,* 13 R. I. p. 138) under said statute. If, by virtue of a contract with the owner of the land, a mechanic has commenced the work of construction or reparation thereon, his lien attaches from that moment, and nothing which the owner of the land or any other person may subsequently do will be allowed to cut under and come in before him in the enforcement of his lien. That is, as said by this court in *McDonald* v. *Kelly,* 14 R. I. p. 339, "The statute gives the mechanic's lien precedence over any other lien which originates after work began." To determine as to priority, therefore, amongst different lienholders, it is only necessary to decide who has the first right

or lien, unless it has been displaced by some act of the party holding it which shall postpone him to subsequent claimants. Phillips on Mechanics' Liens, § 225.

With these general and elementary principles in mind, we are to inquire how they bear upon the facts in this case. We will take the transactions in question in their logical order.

1. On January 17, 1898, the respondent Sharp bought two lots of land on the John Andrews plat, in Providence, for $600 each. He paid no money for said lots but gave a mortgage back on each of them for $2,500, this mortgage being given to secure said purchase price and also for future advances, in accordance with a written agreement of the same date made between him and his grantors. Said mortgages were duly recorded on January 26, 1898, while the work for which the petitioner has a lien was not commenced until some time in November, 1898.

Assuming, then, that said mortgages are valid, it is clear that they take precedence of the petitioner's lien.

The petitioner starts out with the broad contention that said mortgages, though executed and recorded, were invalid and had no legal existence at the time when he commenced the work for which he has obtained a lien, for the reason that at that time no consideration had been paid therefor by the mortgagees, and, further, because the mortgagees had notice of the commencement of said work before any payment was made thereon by the mortgagees. He therefore contends that priority should be given to his lien. It is true that no money had been paid as a consideration for said mortgages at the time when the petitioner's lien attached; but as the mortgages were given not only to secure future advances but also for the purchase price of the lots, it is clear that this, without more, constituted a valid consideration therefor, and hence that in any event the mortgages would have to be held good from the time they were given to the extent of said purchase price. Nothing is more common in transactions in real estate than for a purchaser to give a mortgage back to the grantor for the whole or for a large part of the purchase price of the land; and it would be indeed a shocking doctrine for a court

to hold that in either of such cases the mortgage was without consideration and void as to subsequent purchasers, incumbrancers, or lienors.    In short, that a mortgage given to secure the purchase price of real estate is based upon a good and valid consideration is so manifestly true as to render argument thereon both unnecessary and idle.

The mortgages being valid, then, from the time they were given, the next inquiry which logically arises is whether, as against the petitioner, they constituted a prior lien upon said lots for the full amounts specified therein, or only for the amount of the purchase price of the lots.

(1)    Simultaneously with the giving of said mortgages the parties thereto entered into written agreements, under seal, whereby the mortgagees agreed to pay to Sharp, the mortgagor, said sum of $2,500 upon each of said mortgages, less the purchase price of the lot in each case, and also less certain expenses and commissions, said payments to be made in three installments as the building of the houses which Sharp was to erect on the lots progressed; and the master finds as a fact, and this finding is supported by the evidence, that the mortgagees have advanced the sum named in the mortgage in each instance.    But the petitioner contends that under said agreements it was optional with the mortgagees whether they would make said future advances, and hence that as they did so after his lien attached and with knowledge thereof—that is, with knowledge that he had commenced work on said sewers—his lien takes priority over theirs.    As we are of the opinion, however, that under the agreements referred to it was not optional with the mortgagees to make the future payments stipulated for therein, but that such payments were obligatory and binding upon them, as found by the master, it is unnecessary for us to determine as to the correctness of the petitioner's position in this regard, it being well settled that where a "mortgagee is under obligation to make the advances, he is entitled to the security, whatever may be the incumbrances subsequently made upon the property and whether he has notice of them or not."    1 Jones on Mort. § 364.

But the petitioner further contends that as the future advances which the mortgagees agreed to make were for the sole purpose of enabling the mortgagor, Sharp, to build houses on said lots and pay for the labor and material used in their construction, such advances were only obligatory, in any event, to that extent and for that purpose, and hence that it was incumbent on the mortgagees to see to it that the money advanced was used for the purpose for which it was intended and for no other. This contention is based upon the facts which appear in evidence, viz.: that although said advances were made by the mortgagees, as aforesaid, some of the money was applied by Sharp to other purposes than those specified in the agreements; that the last payment at least, in each instance, was anticipated by the mortgagees, and that said houses have never been fully completed. The argument of counsel for petitioner is to the effect that in view of said agreements Sharp could not compel the mortgagees to make said advances for any other purpose than that specified, and that the mortgagees could not voluntarily make the same and then claim that they were obligatory; but that in order to be entitled to enforce their mortgages as prior incumbrancers to the petitioner, it devolved upon them to make said advances in strict conformity to said agreement, and also to see to it that every dollar they advanced was used in paying for the labor employed and the materials used in the construction of said houses.

We cannot assent to such a construction of the contract or to the existence of such a duty on the part of the mortgagees. The mortgages in question were regularly given; each one shows on its face the nature and extent of the consideration, to wit, the giving of a negotiable promissory note for the sum of $2,500, payable in six months from date, with interest payable semi-annually in advance at the rate of six per cent. per annum; and they were duly recorded some time prior to the doing of any work on the premises by the petitioner. No question of fraud being raised in connection with said transactions, what more must be shown by the mortgagees in order to entitle them to enforce their claims as they appear

of record?   We fail to see that they were subject to any further legal duty in the premises.   They had taken mortgages on property which was unincumbered, they had paid a valuable consideration for said mortgages, and they had caused them to be recorded.   And to hold that they must do more, in order that their claim should take precedence of subsequent incumbrancers, would be to strike a stunning blow at ordinary transactions in real estate.

The mortgages being of record when the petitioner commenced his work, he had notice thereof and must govern himself accordingly.   He knew the record amount of each mortgage, and, in the absence of any inquiry of or knowledge obtained from the parties thereto as to the actual incumbrance and the particular nature thereof, he was bound to presume that the incumbrance as it appeared of record was the true one.   At any rate, by commencing work as he did he took the risk of being superseded, in any claim which he might make against either of said lots of land, by a prior mortgage thereon for the sum of $2,500.   And he has therefore no occasion to complain when it turns out that such in fact was the amount of the prior incumbrance.

"When a mortgagee has placed his mortgage upon record" (says Mr. Phillips, in his work on Mechanics' Liens, 3rd ed. § 232), "his rights are then protected by law.   He has given such notice as the law has prescribed, and is not bound either to assent or dissent to any agreement made by the person in possession for improvements.   The lien of the mechanic in such cases for work and labor done upon mortgaged property, at the instance of the mortgagor, is subordinate to that of a mortgagee, although the latter knew of such work and labor at the time the mechanic rendered the same, and did not object. . . .

"If a contractor proposes erecting buildings, furnishing materials, or putting labor on a lot of ground, it behooves him to examine and assure himself of the fact that the person with whom he contemplates making the contract, or for whose benefit he is about to employ his means or labor, has such an interest or title, unincumbered, as will enable him

to avail himself of a valid or efficient lien.   Under the system of registration in this country, a little diligence will always impart to a person the requisite information; and if he fails to inform himself, the law will not relieve him against the consequences of his own negligence."

As to the contention that it was the duty of the mortgagees to see to the application of the future advances made by them, we have to say that we know of no such duty. They were not dealing with a trustee when they made the advances agreed upon, as aforesaid, but simply with the owner of said lots; and hence their only obligation was to fulfill their contract with him. *Moroney's Appeal*, 24 Pa. St. p. 376. Moreover, even if they saw fit to make said advances before they were actually due under the contract, or to stand by and permit Sharp to use some part thereof for other purposes than those agreed upon, this was their lookout, and we fail to see that the petitioner can take any advantage thereof.

It is a matter of common knowledge that savings banks, trust companies, and other lenders of money frequently take mortgages in a similar way to that in which these were given. That is, where an owner of land desires to improve the same by erecting buildings thereon, they take a mortgage for a given amount, a part of which they advance at once, and then, under an agreement made with the mortgagor at the time of the execution of the mortgage, they advance the balance in installments as the work progresses, thus enabling the owner of the land to increase the value of his property and at the same time securing themselves for the loan. And where under such an agreement it is obligatory and not merely optional on the part of the lender to make such future advances, they stand on the same footing as to subsequent incumbrancers as though such advances were made at the time the mortgage was given. Thus, in *Ladue* v. *Detroit Railway Co.*, 13 Mich. 380, cited by the petitioner, which is a leading case on the question of the priority of liens for future advances, the court, while holding that a mortgage to secure future advances which are optional does

not take effect between the parties as a mortgage or incumbrance until some advance has been made—that, if not made until after another mortgage or incumbrance has been recorded, it is in fact as to such after-advances a subsequent and not a prior incumbrance, and that the record of the subsequently recorded mortgage is notice as to such after-advances as much as if the mortgage first recorded had not been executed—yet the case clearly holds that where a binding contract is entered into between the parties for future advances, the mortgage operates as a security therefor from the time it is given.

In *Boswell* v. *Goodwin*, 31 Conn. 85, the principle is stated by the court as follows : " When one having actually made or undertaken to make advancements, or assumed or undertaken to assume liabilities for another, has taken a mortgage in proper form for his indemnity, and placed that mortgage upon record, his incumbrance is consummated, and he may safely leave it to its fate. But when without some further act to be done by him the instrument has and can have no effect, and where it is optional with him to do such act or abstain from doing it, why should he not be required, until he does that act, to recognize and regard the intervening rights acquired by others, and be held chargeable with whatever notice of the state of the mortgagor's title the public records may disclose when the act is done ? "

In *Nelson* v. *The Iowa R'y Co.*, 8 Am. R'y. Rep. 88, the law is stated as follows : " When a mortgagee has bound himself to make advances or incur liabilities, such advances tack, and the mortgage when recorded is a valid lien for all the advances actually made, although they may have been made after notice of a subsequent mortgage or incumbrance of the property." To the same effect are *Bank of Montgomery's Appeal*, 36 Pa. St. 170 ; *Wilson* v. *Russell*, 13 Md. 494 ; *Brinkmyer* v. *Browneller*, 55 Ind. 487 ; 3 Kent's Com. 175 ; 1 Jones on Mort. 4th ed. §§ 364, 370 ; *Lyle* v. *Ducomb*, 5 Binney, 584 ; Am. & Eng. Ency. of Law, 1st ed. Vol. 15, p. 799, and cases in n. 3. See also an article in Vol. 11, Am. Law Reg. (N. S.) 273.

We next come to the question involved in the finding of law by the master—that it need not appear upon the face of the mortgage that it is for future advances if the extent of the incumbrance can be readily ascertained from the record, and that in such case the agreement under which the advances are to be made need not be recorded.

The petitioner insists that a mortgage to secure future advances must state the real purpose for which it is given, in order to make it effective as against subsequent incumbrancers, and that the rule applies equally whether the advances to be made are optional or obligatory. He therefore contends that as the agreement relating to the advances made in the case at bar was not recorded, and as said advances were not in fact made until after his lien attached, he is entitled to priority over the mortgages in the marshaling of the claims in question.

While the authorities are not entirely uniform upon the question thus raised, we think the weight thereof, as well as the better reason, are opposed to the position taken by the petitioner. No doubt it would have been proper, and we are inclined to the opinion that it would have been better, for the mortgages in question to have stated the actual consideration for which they were given more fully. But that the failure to do so rendered the mortgages invalid as to said future advances is a proposition to which we cannot assent.

It was said by Chief Justice Marshall, in the case of *Shirras* v. *Caig* (7 Cranch, 34): "It is not to be denied, that a deed which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a vigorous examination. It is certainly always advisable, fairly and plainly, to state the truth; but if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed, of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation."

In *Moroney's Appeal, supra*, it was held that a mortgage

given with a bond in the common form, and immediately recorded and intended to secure the payment of a sum of money which the mortgagee then contracted to loan to the mortgagor for the purpose of enabling him to erect houses on the mortgaged property, and which was .to be advanced in proportion to the progress of the work, was valid, though the contract of loan was not referred to in the mortgage nor recorded ; that it ranks as a lien for the amount loaned from the date of its record and not from the date of the actual advances ; and that this is so though the mortgagor contracted to apply the money to the payment of the builders and had in part failed to do so, and they had entered their liens.

*Platt* v. *Griffith*, 27 N. J. Eq. 208, is quite similar to the case at bar. There the mortgage was given to secure the payment of $3,500 in one year from its date, with interest. It was recorded before the building was commenced, but the money which it was intended to secure was not advanced before the commencement of the building. It was held that the mortgage was a prior lien to claims for materials furnished in the construction of the building to the full amount of the mortgage, if so much was advanced. The court said : '' When the building was begun his mortgage was on record and was notice to those who should furnish materials or labor for the building that the land was pledged by the mortgage for the amount declared to be secured by it—$3,500—and interest thereon. . . . The money was advanced, according to the agreement, in installments, as the work on the building progressed, and was used in the construction of the building. There appears to be no good reason why the complainant should not have the benefit of his mortgage. . . . The conclusion flows from the fact that the lien claimants had notice before giving credit on the security of the land of the existence of the complainant's mortgage, and of the amount for which it was to be security ; and in such case where the mortgage is executed *bona fide* to secure the payment of advances to be used in constructing a building, there appears to be no reason why the mortgagee should not have

priority as against lien claimants with notice, to the extent of his advances *bona fide* made according to his agreement, up to the amount for which the mortgage is, according to its terms, intended to be security."

It is to be observed that the agreement on the part of the mortgagee to make the advances in the case just referred to was merely verbal; but the court held that that circumstance did not affect the result. And such we think is the law. 1 Jones Mort. § 375. It is probably true that in most mortgages given for future advances in this State the agreement to make the advances is neither incorporated in the mortgage nor reduced to writing.

In *Craig* v. *Tappin,* 2 Sandf. Ch. Rep. 78, the assistant vice-chancellor, after a careful review of the authorities upon the point now before us, comes to the conclusion that a mortgage intended to secure future advances need not express that object in the mortgage itself, although it would be better if it did. See also *Collins* v. *Carlile,* 13 Ill. 254; *Witczinski* v. *Everman,* 51 Miss. 841; *McIntosh* v. *Thurston,* 25 N. J. Eq. 242; *Taylor* v. *La Bar,* Ib. 222; *Griffin* v. *Oil Co.,* 3 Stock. (11 N. J. Eq.) 49.

In *Holland* v. *Savings Bank,* 16 R. I. 734, it was held that, after a mortgage had been given, a stranger to it acquiring an interest in the mortgaged property gets no equity against the mortgagee at variance with the latter's rights, so long as the latter does nothing to create such equity.

In *Coates* v. *Wilson,* 20 R. I. 106, this court, in speaking of the effect of recording a mortgage taken by a salesman of the plaintiff in his own name, but in fact for the benefit of the plaintiff, said: "The mortgage, having been put on record, was notice to all the world that the property of the mortgagors included in it was subject to the incumbrance, and was enough to have put all persons interested in the affairs of the mortgagors upon inquiry." See also *Howe* v. *Tefft,* 15 R. I. 477, as to priority of a mortgage over an attachment.

We therefore decide that it was not essential to the validity of said mortgages that it should appear therein that they

were given to secure future advances, or that the written agreements aforesaid should have been recorded.

We now come to the question, as to the validity of the mortgages on said lots 20 and 21. These are the mortgages which were executed to the respondent Hoppin, but for which he paid no consideration and subsequently transferred to the Aldriches, receiving no consideration from the latter. The master finds that this transfer occurred subsequently to the commencement of the work on the houses, but that at the time these mortgages were executed the contracts before referred to were entered into, and that these contracts recited said mortgages to the respondent Hoppin and the transfer thereof from him to the Aldriches. Also, that money was advanced by the Aldriches under said contracts, and in case of lot 20, at least, the first payment was made under said contract before the transfer was actually executed by Hoppin.

Counsel for the petitioner contend that at the time work was commenced on the houses on these lots the mortgages last referred to had no legal existence ; that is, that, although the papers were drawn and recorded, no consideration had been paid for the same and the respondent Hoppin had no right in the premises that he could enforce against anybody, and that, so far as the petitioner's rights in these lots are concerned, Hoppin was still the owner of the mortgages at the time these proceedings were commenced, the transfers never having been recorded and the petitioner not having had actual notice until after the petition in this suit was filed, and hence that the owners of these two mortgages are in no better position than Hoppin.

With this contention we cannot agree. It is true, as said by the master, that the interest which Hoppin had in said mortgages, and which he assigned to the Aldriches, was not such as in itself alone could be enforced by the present or any other holders of said mortgages against the lienor in this case ; but at the time the mortgages were executed contracts were also executed which show that the Aldriches were considered the real owners of the mortgages, and by

said contracts they obligated themselves to advance money on consideration of said mortgages to Hoppin and their transfer to the Aldriches. Consequently the Aldriches were the equitable owners of said mortgages from their execution, and had rights thereunder which they could enforce. They could have compelled a transfer of the legal title to said mortgages from Hoppin to themselves as equitable owners thereof.

Counsel for the petitioner cite in support of their contention on this point the case of *Schaffer* v. *Reilly*, 50 N. Y. 61. In that case a mortgage was executed to the father of the mortgagor without consideration, and was at once recorded. The mortgagee never had possession of or title to the mortgage, the same having been giving for the purpose of raising money for the mortgagor and with the intention of negotiating it, and apparently remained in the possession of the mortgagor. The mortgage was subsequently assigned by the mortgagee for value, and the money paid to the mortgagor. The court held that the mortgagee never had any claim which could be enforced adversely to any one ; that the vitality of the mortgage was due to the purchase and assignment of the claim for value ; and that a lien which attached between the date of execution and date of assignment of the mortgage had priority thereto.

The case under consideration, however, is very different from the one referred to. In that case neither the mortgagee nor anyone else had an interest in said mortgage which could be enforced, until its assignment for value ; while in the case before us the Aldriches, by obligating themselves to make advances under the mortgages to them, and by the conveyance of said lots, were in a position to enforce said mortgages from their execution.

As well argued by counsel for respondents, ''It is apparent, from the collateral agreements relating to said lots, that in each instance the consideration of the mortgage given to Hoppin was· the promise of the Aldriches to make the advancements. And it matters not from whom the consideration issued, so long as it is clear that there was a valid con-

sideration for that mortgage. It is further to be observed that in each instance the transfer of the land, the mortgage to Hoppin, and the collateral agreement for the advances constituted an entire transaction, all of which elements of the transaction are recited and considered in the collateral agreements. Hoppin (the consideration for the mortgages issuing from the Aldriches) was a resulting trustee for the Aldriches, who were the equitable owners of the mortgages at all times, as the subsequent transfers to them confirm. The mortgages to Hoppin were recorded contemporaneously with the deeds, and the liens by them created attached at once. . . . The date of the transfers of the mortgages or the omission to record the same, do not therefore concern the petitioner."

We therefore decide that these mortgages, like those previously considered, having been given for a good and sufficient consideration, were valid from the time they were given ; and having been recorded, as aforesaid, must be given priority over the petitioner's lien. We see no occasion to question the correctness of the finding of the master that the mortgagees should be allowed the expenses incurred in their attempted foreclosure proceedings up to the time of the injunction, assuming, as we do, that he intended to include only the actual and necessary expenses thus incurred.

We have thus considered at unusual length the questions raised in this case because of their unusual importance, and also because they have never before been decided in this State. We are aware that other courts, for whose opinions we have great respect, have decided them differently ; but, after careful consideration and diligent investigation, we have come to the conclusion that our findings are in accordance with the true spirit and meaning of the statute law of this State upon the subjects involved, and also that they are in accordance with the better decisions elsewhere. To take the position insisted on by the petitioner would be to practically disregard the plain and well-understood effect of our recording acts and to cast doubt and uncertainty upon the validity of mortgages of real estate. And if any business

transactions should be specially free from doubt, this class should certainly be included therein.

We agree fully with the spirit of the argument of petitioner's counsel — that the liens of mechanics and materialmen should be favored by the courts on the ground that such labor and materials go to enhance the value of the real estate upon which the work is done. But that courts cannot favor them to the prejudice of the prior vested rights of others in the estate goes without saying. Mechanics and materialmen, as well as all others who deal with real estate with the intention of obtaining a lien thereon, must understand that they must take it as they find it; that is, subject to all the incumbrances and burdens legally existing thereon at the time when they commence to deal therewith, of which they have either actual or constructive notice. To hold this to be the law is not only in accordance with common justice, but is in accordance with common sense as well; for that which a man does with his eyes open, and with knowledge of what he is doing, can never be held to furnish just ground of complaint against others.

The exceptions are overruled, and a decree may be entered confirming the master's report.

*C. M. Lee and J. S. Carpenter,* for petitioner.

*Robert W. Burbank,* for mortgagees.