MARY A. BAGLEY, Ex. *et al. vs.* MYRA M. PAGE.

JANUARY 16, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

BAKER, J. This suit in equity is before the court on the complainant's appeal from a decree entered in the Superior Court dismissing the bill of complaint, after a hearing on bill, answer and proof.

The complainant brings the bill individually and as executrix under the will of her deceased husband, Joseph W. Bagley, against her daughter, the respondent, to have a certain note and mortgage for $5,000, covering a parcel of land in the city of Pawtucket, with a house and workshop thereon and the contents of such workshop, declared void as an encumbrance upon the property in which she, the complainant, claims an interest, and to have such note and mortgage delivered up to the court, and the mortgage cancelled and discharged on the records of that city. The basis of the relief asked for in the bill is that no adequate or valuable consideration was given for the note and mortgage. The answer admits most of the allegations of the bill, but denies the one relating to the alleged failure of the respondent to give adequate consideration.

From the record it appears that the mortgage, dated July 2, 1932, and recorded in Pawtucket the same day, was made by Joseph W. Bagley, who owned the property in question, to the respondent, his daughter. The complainant did not join in the execution of the mortgage in any way. Mr. Bagley died May 7, 1933, at the age of sixty-seven. In 1914 he had made a will, giving all his property to the complainant for life, with power to mortgage and sell the same if necessary for her support. This will was duly admitted to probate in Pawtucket, and the complainant was named and duly qualified as executrix thereunder. She contends that the mortgage to the respondent was made in order to nullify the will.

The testimony shows that the complainant and her husband had not been on friendly terms, owing to domestic difficulties, for a considerable time prior to his death, not speaking to one another except on rare occasions for some five years. In the spring of 1931, the complainant left the house in Pawtucket and went to live in Saylesville with a son-in-law to keep house and to look out for his children, his wife having died. Prior to this time, Mr. Bagley, who was suffering from rheumatism and heart trouble, had been living in the workshop on the premises, claiming to have done so on the advice of a physician who had told him to find a place where he could rest and be quiet. During this period Mr. Bagley was receiving in rentals from property he owned in Central Falls sums which averaged slightly in excess of $350 per year. A substantial part of this money was spent in maintaining this property, and the remainder he used for personal expenses. He apparently had no other income.

The respondent, the daughter of Mr. Bagley and the complainant, had been living with her husband and three children, for about eleven years in Attleboro, Massachusetts, where her husband and a daughter were employed. The respondent's relations with her father were friendly and she often visited and took food to him, especially after her mother went to Saylesville to live. In the spring of 1932, Mr. Bagley urged the respondent to move her family and to come and live with him in Pawtucket and look out for him, as he was then not well and had little money. About this time the respondent paid from her own funds her father's water bill. Soon after she learned that the property in Pawtucket had been levied on and was being advertised for sale for nonpayment of the city tax for 1931. This tax and additions, amounting in all to $121.65, she herself paid in May, 1932, with money she took from her own bank account.

In the early summer of 1932, the respondent, after consultation with her husband, decided to take her family to

her father's home in Pawtucket in accordance with his desires, and her furniture and goods were so moved, although this change caused some inconvenience to her husband and daughter, the latter giving up her position in Attleboro. Most of the summer was spent by the respondent and her family at a cottage on Narragansett Bay, frequent visits being made to her father in Pawtucket, and he often staying with them at the shore. In the late summer they moved back to Mr. Bagley's house and continued to live there, he dying some eight months later. The respondent and her family paid Mr. Bagley no rent. However, she looked out for her father, massaged his hand and arm which were affected with rheumatism, helped him dress and tie his shoes, cut his food and paid all the costs of maintaining the household. At times he was so crippled with rheumatism that he was compelled to use crutches. In addition, the respondent and her husband, at their own expense, painted, papered and renovated certain parts of the house. In December, 1932, she paid from her own funds the city tax for that year amounting to $129.06, and later, before her father's death, made a payment of $50 on the tax for the following year.

The respondent does not claim that she paid her father any money for the note and mortgage when he delivered them to her, or that there was any prior agreement or understanding between them that she should receive any such documents as a consideration for moving from Attleboro and coming to live with him, in order to look out for and maintain him. It does appear in evidence, however, that, in answer to a question from him when she first moved from Attleboro, the respondent stated that she would look out for him for the rest of his life. She contends, in substance, that a gift of these instruments was made to her by her father from love and affection on his part, and because of what she had done for him and expected to do for him in the future. If actual consideration from her be required, to validate the transaction, she

argues that it was furnished by money she paid out in taxes, water bills and the like, the expenses incident to supporting and caring for her father as long as he lived, and money and work laid out on the property. The complainant urges the invalidity of the note and mortgage, but also argues that if the court does not accept this contention, then, in any event, they should be held good only to the extent of the expenditures actually made by the respondent on behalf of her father and his property.

From the testimony of the respondent, it appears that, although the note and mortgage were executed July 2, 1932, she knew nothing about their existence till some time in August of that year. She is the only witness who gives evidence as to their delivery. She testifies that one day, when she had come from the shore and was with her father in his house, she asked him whether he could pay the 1932 city tax which was then coming due, that he stated that he had no money, and that she then told him that she would pay it. Thereupon, he gave her the note and mortgage, telling her to put them away and that he had made the mortgage to protect her for what she did for him, and she then took the papers and kept them. She further testifies that on this occasion he said: "This will always keep you until you get back everything you put in. If I ever get on my feet again and can work, of course, I could pay it all back, and everything would be all right, and otherwise I always want you to have this house, it is yours."

A witness for the complainant, the attorney who drew the papers, gave evidence that Mr. Bagley stated that he had been living alone without money, that his health was bad, that he did not know how long he was going to live, that he had persuaded the respondent to come and live with him and take care of the house and that he considered she was doing him a great favor. Also, that he said, without naming any definite amount, that the respondent had paid his taxes and living expenses and that he wanted to

make her whole, he wanted her to be paid. A witness for the respondent, a friend of Mr. Bagley, testified that in a conversation held before the mortgage had been drawn, the latter stated that the respondent was the only one who really cared for him, that he intended to have her come and live with him and attend to everything, and that he would fix it so that "she would never have to worry about the trouble and the money to take care of him while he lived." The witness testified that on another occasion, after the respondent had come to Pawtucket, Mr. Bagley said that he was going to fix it so that she would have the house, and still later he said, referring to the execution of the note and mortgage: "I have done it at last . . . I fixed Myra up all right."

The evidence given by the witness last mentioned was to some extent attacked by the complainant, but the testimony of the respondent and the attorney, on the issues above designated, stands uncontradicted. In the instant cause, the Superior Court found that Mr. Bagley had made a gift to the respondent of the note and the mortgage in question for the full amount named therein, no rights of creditors being involved, and that, if any consideration were necessary to validate the transaction, sufficient had been shown by the respondent. These findings of the trial justice are undoubtedly entitled to great persuasive force, but this court has often held that an appellate court is in as favorable a position as a trial court to draw inferences from undisputed facts and testimony. *Stiness* v. *Brennan,* 51 R. I. 284; *Lisker* v. *Emery,* 54 R. I. 190. Further, it is well settled that one contending for a gift, as does the respondent herein, has the burden of proving such gift by satisfactory evidence. *Stiness* v. *Brennan, supra,* and cases cited.

Our consideration of all the evidence presented, together with such reasonable inferences as may be drawn from the undisputed facts and testimony, causes us to find that the trial justice was in error when he determined that Mr.

Bagley had made an outright gift to the respondent of the note and mortgage for their full amount. While it is obvious that he cared more for the respondent than for his estranged wife and the other members of his family, nevertheless, in our opinion, the testimony fails to show satisfactorily that he intended to make a gift of the documents in question. It is clear that his object and purpose in executing the note and mortgage was to provide a security for the respondent, so that she would be protected in relation to any inconvenience suffered and effort made in his behalf, and reimbursed as to any and all expenditures she had already made, or in the future might be required to make during his lifetime, in connection with himself or his property.

This conclusion is, in our judgment, supported by the evidence of the attorney who drew the papers, and in particular by the testimony of the respondent herself. While the latter did state that her father said he wanted her to have the house, it will be noted that this suggestion was conditional. The mortgage itself could not operate as a testamentary disposition of the property. Taking the respondent's entire testimony on this point into consideration, it is plain that both she and her father viewed the note and mortgage as a protection or a security only, and not as a gift. From this evidence it also appears that Mr. Bagley had the thought of repaying the respondent for her care, effort, and outlay if he should be able to work, and if this repayment were made then the mortgage was to be ineffective. In making an outright gift, the donor parts with all property in and control over that which is given. The amount of the mortgage, which fully covered and probably exceeded the value of the property, is explained by the fact that Mr. Bagley did not know how long he might live, and what expenses the respondent might be put to on his behalf and, therefore, wished to have her amply protected and secured.

Our finding is that the respondent's note and mortgage are valid and binding for such amount as she may be able to show that she is entitled to thereunder. This aspect of the instant cause apparently was not fully covered in the Superior Court hearing now before us for review. In our opinion, the bill of complaint should not be dismissed, but a further hearing should be held to determine the precise amount due under such note and mortgage. The result of such hearing, if it revealed that less than $5,000 was due, would be in the nature of partial relief for the complainant. The respondent objects to such a proceeding on the ground that no specific prayer for such relief or for an accounting appears in the bill of complaint. While this is true, and while such a prayer might well, under the circumstances herein, have been incorporated in the bill, we are of the opinion that, as no other parties are involved, the matter in question can be disposed of in this cause under the prayer for such other and further relief as the court may see fit to grant, which prayer is contained in the bill. See *Oliveira* v. *Oliveira,* 52 R. I. 92. The ascertainment of the amount properly due under the mortgage is so closely connected with the purposes of the bill of complaint and the relief sought thereunder that it can be considered under the request for general relief. It is not matter new and entirely foreign to the scope of th bill as drawn.

In taking an accounting and in determining the true amount of the note and mortgage, it is our opinion that the respondent should receive reasonably liberal consideration. We find, from our examination of the evidence, that this was the intention of Mr. Bagley. He appreciated the fact that the respondent had come to live with him in order to take care of him while he was ill and financially embarrassed when other members of his family had apparently lost interest in him. In executing the note and mortgage, he wished to have the respondent fully protected and secured for all inconvenience suffered, and all care,

194

effort, and money expended by her on account of himself and his property.

No question concerning the complainant's dower rights, if any there be, in the property involved is raised under the present bill of complaint or passed upon herein.

The appeal is sustained, the decree appealed from is reversed. On January 25, 1937, the parties may present to us, to be entered in the Superior Court, a form of decree in accordance with this opinion.

*Vance & Vance, Joseph T. Witherow,* for complainant.

*George A. Panaretos, Charles E. Mangan,* for respondent.