258 A.2d 82.

PEOPLE'S SAVINGS BANK IN PROVIDENCE *vs.* THE CHAMPLIN LUMBER COMPANY *et al.*

OCTOBER 31, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This bill in equity was brought in the Superior Court to determine whether People's Savings Bank, the holder of first mortgages on two parcels of real estate, or The Champlin Lumber Company, the holder of subsequent encumbrances on the same property, is entitled to the surplus proceeds realized when People's foreclosed its mortgages. From a judgment[1] in favor of Champlin, People's has appealed.

The facts are stipulated and, in any event, briefly stated. People's made loans to the debtors on November 20, 1959, December 17, 1959, and December 22, 1960. Each loan was secured by a duly recorded first mortgage on a parcel of real estate located in the town of North Kingstown (lots 13, 14 and 23 respectively), and each mortgage deed recited that it was given

"* * * to secure the payment of the principal and interest of a certain promissory note of the mortgagor(s) of even date herewith, and to secure the payment and the performance of any and all other present and future indebtedness and obligations, primary or contingent, direct or indirect, secured or unsecured, of the mortgagor(s) * * * to the mortgagee, its successors or assigns * * *."

---

[1]This case commenced prior to the adoption of new rules of civil procedure in the Superior Court, but was tried after the effective date of those rules.

Subsequent to the recordation of People's mortgages on lots 13 and 14, but prior to the execution of the December 22, 1960 mortgage on lot 23, the same debtors executed and delivered second mortgages on lots 13 and 14 to Champlin as security for contemporaneous borrowings. Those mortgages were duly recorded, and while People's thereby acquired constructive notice[2] of their contents, it lacked actual knowledge of their existence when it made its third loan on December 22, 1960.

In 1962 People's foreclosed on its three mortgages. The foreclosure sales on lots 13 and 14 produced a surplus of $2,732.58 while that on lot 23 resulted in a deficiency of $3,604.42. People's now claims the surplus realized at the sale on lots 13 and 14 in order to satisfy the deficiency on lot 23. In support it argues that the December 22, 1960 loan, even though secured by a mortgage on lot 23, also constituted a future advance under each of its two earlier mortgages and thereby became entitled to the security which those mortgages give to obligations owed by the mortgagors to it. Champlin, which is owed $10,275. on its mortgages, takes a contrary view. Its position is that the December 22nd loan, although an advancement under the prior recorded mortgages, was voluntary and therefore inferior to its claim which arose under an encumbrance intervening between the earlier mortgages and the advancement.

The issue generally is whether or not a future loan or advance made pursuant to a real estate mortgage is effective as a lien against a subsequent encumbrance from the date of the recordation of the earlier mortgage or from the time when the advancement is made. Apart from statute,

---

[2]Our statute on recordation, G. L. 1956. §34-13-2, provides:

"Such record or filing shall be constructive notice to all persons of the contents of such instruments and other the matters so recorded, so far as the same are genuine."

the decisional law is readily ascertainable and divides generally on whether the advance is obligatory or optional.

Where the first mortgagee is under an obligation to make the advance, there is no doubt that the advancement is a lien or charge superior to a claim arising under an intervening encumbrance, and the cases hold this irrespective of whether at the time of the advancement the prior mortgagee had notice, either actual or constructive, of the subsequent encumbrance. *Blackmar* v. *Sharp*, 23 R. I. 412, 50 A. 852.

There is no similar accord among the authorities, however, when the advancement is voluntary and optional, rather than obligatory, and when it has been made only upon the mortgagor's prior request, and upon the mortgagee's approval. Then, the varying results reached by the courts turn generally on notice and on whether, in the judgment of the deciding court, a first mortgagee should be burdened with examining the record each time he makes an advance, or whether, instead, its judgment is that the subsequent encumbrancer shall be obliged to notify the earlier mortgagee of his pending transaction with the common borrower.

Some courts, and they are in a minority, refuse to distinguish between an *optional* and *obligatory* advance, and in those jurisdictions the lien of an advance made under a mortgage securing future optional advances is absolute and in all events takes priority over an encumbrance intervening between the valid recording of that mortgage and the advancement. See cases cited in Annot., 138 A.L.R. 566, 576-578.

A majority of the jurisdictions, however, protect a voluntary advancement made under a mortgage of which subsequent parties have any notice only if it was made without actual notice of the intervening encumbrance. See cases in Annot., 138 A.L.R. 566, 579-80. In these jurisdictions,

an intervening encumbrance can insure priority for his claim by giving the prior mortgagee actual notice of his lien. *Id.* at 568-571.

In this state we have shown little concern for the priority of a voluntary advancement, and in *Blackmar, supra,* our only opinion on the subject, we said that a recorded mortgage providing for an option either to advance or to abstain must yield to a subsequent encumbrance if, when the advance is made, the mortgagee either knows or is chargeable with notice that there has been an intervention. People's argues that the foregoing principle is dicta and not a holding; that the cases[3] cited in support are inapposite; and that, in any event, it has been dulled and should not be followed because it is contrary to the great weight of the modern-day decisional law, subserves business convenience and is unsuited to the practices which today prevail in the commercial world.

We consider these arguments within the context of chapter 25 of title 34, entitled "Future Loans and After-Acquired Property" and enacted by the legislature in 1952. In substance and insofar as is pertinent to our present inquiry, it permits a real estate mortgage to secure present and future advances; it sets out mandatory prerequisites among which is the requirement that the mortgage deed state "* * * a maximum amount as the total of the principal amount of loans to be secured thereby"; and, subject to the specific exceptions noted in §34-25-3, it gives absolute priority to obligatory advances not in excess of the "stated maximum amount" and extends a like priority to optional future advances, but only up to $3,000.

---

[3] At pages 422-423 the Court in *Blackmar* relied on *Ladue* v. *Detroit* and *Milwaukee R.R.,* 13 Mich. 380, 87 Am. Dec. 759 and *Boswell* v. *Goodwin,* 31 Conn. 74, 81 Am. Dec. 169, as supporting the view that record notice of an intervening encumbrance is sufficient to interrupt the priority of a subsequent optional advance.

230

While we are not ready to say that the legislature by enacting title 34, chapter 25 preempted the field and thereby established an exclusive method for securing future loans under real estate mortgages, we do say that the enactment must be considered as a legislative expression that the public policy of this state frowns upon anything but a limited protection for a voluntary advance. People's arguments lose their persuasive force once that is recognized and once it is acknowledged that what we said in *Blackmar,* although dicta, was, at least until the legislature spoke, accepted as the settled law of this state. To overrule *Blackmar* in the light of these considerations would require a strong social policy running counter to what we said in that case, or some firm indication that the legislatively expressed public policy will seriously impair the obtaining of adequate mortgage financing. Neither has been demonstrated.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Edwards & Angell, John H. Blish,* for plaintiff.

*Domenic Tudino, Gordon C. Mulligan, Letts & Quinn, Daniel J. Murray, Alan S. Flink,* for Nathan M. Wright, Jr., amicus curiae.