CLIC & CO., Etc., et al.,
Plaintiffs, Appellees,

v.

Susan GOLDFARB, Etc., et al.,
Defendants, Appellees.

Paramount Restaurant Supply Corp. and Regency Financial Corp.,
Defendants, Appellants.

No. 87–1240.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1987.
Decided Feb. 4, 1988.

James E. Purcell with whom Roger E. Goodman and Tillinghast, Collins & Graham, Providence, R.I., were on brief, for appellants.

Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for defendant-appellee James Abdnor.

Before BOWNES and BREYER, Circuit Judges, and LAFFITTE,* District Judge.

BREYER, Circuit Judge.

A lender called Community Loan and Investment Corporation (CLIC) deposited about $120,000 (with interest) in state court, interpleaded several different defendants, including the Small Business Administration (SBA) and Paramount Restaurant Supply Corporation, and asked the court to decide which defendant is legally entitled to the money. On the SBA's motion, the case was removed to federal court. 28 U.S.C. § 1442(a)(1) (1982). This appeal concerns about $30,000 of that money (plus interest) which the magistrate awarded to Paramount, but which the district court (reversing the magistrate) took from Paramount and gave to the SBA instead. Our reading of the record leads us to interpret the magistrate's factual findings somewhat differently than did the district court; and the difference in factual interpretation leads us to conclude that, as the magistrate held, the law entitles Paramount to the money.

The significant underlying facts (which we shall simplify) concern the borrowings of a fish restaurant called Sea & Surf, owned by a company called Framingham Food Services, Inc. (FFSI). As of 1979, FFSI owed money to the Shawmut Bank and also to another bank, Pocasset Savings, whose loan was guaranteed by the SBA. Each of the major creditors held a mortgage on the fish restaurant. In 1979, the restaurant wanted to borrow another $120,000. FFSI asked the SBA's permission to borrow the money, secure the borrowing with another mortgage on the restaurant, and subordinate the SBA mortgage to the new one. The SBA gave its permission, thereby reducing the SBA's own secured interest to third in seniority behind the Shawmut mortgage and the new $120,000 mortgage. Subsequently, FFSI wrote a promissory note for this $120,000; it issued a mortgage on the restaurant to secure the note; and it gave both to a company called Utopia, which, in early 1980, assigned them to CLIC for $1.00. But FFSI *did not then borrow the money.*

That is to say, neither Utopia, while it held the $120,000 mortgage and promissory note, nor CLIC, when it acquired both from Utopia for $1.00, actually loaned FFSI any money for the restaurant. Rather, the restaurant, having given a mortgage securing a promise to pay $120,000 that it had never received, held only an expectation (or hope) of receiving up to $120,000 from a lender who (like one who extends a secured line of credit) could (in light of the mortgage) be paid ahead of the SBA.

In late 1980, Paramount agreed to lend FFSI $30,000 for the restaurant. The record reveals that Paramount did this by writing two checks to CLIC. CLIC, in turn, used some of the money to pay taxes that the restaurant owed and gave the rest to the restaurant itself. The chief executive officer of CLIC, in uncontradicted testimony, agreed (1) that he was "holding the one hundred twenty thousand dollar mortgage and promissory note for the benefit of ... Paramount to the extent of their advance;" (2) that "since [CLIC is] holding that mortgage and promissory note [on Paramount's] behalf, ... to the extent that [CLIC] received funds based upon that promissory note and mortgage, [Paramount] should be paid out of the proceeds;" and (3) "[t]he funds advanced by [Paramount] were advanced for purposes con-

sistent with the understanding with the SBA." He added, "[m]y understanding with ... Paramount [was that] if I was ever in the position to pay out the thirty thousand dollars that I would pa[y] it out to them." In addition, Paramount wrote CLIC a letter stating that once it received back its $30,000, CLIC was "authorize[d] ... to assign or discharge the mortgage."

Sometime later, FFSI became insolvent. The SBA foreclosed and bought the restaurant at the auction. The SBA then paid off the first mortgage. Apparently not realizing that CLIC had not actually given the whole $120,000 to FFSI, the SBA also paid $120,000 (plus interest) to CLIC. The SBA used the rest to satisfy a portion of the debt that FFSI still owed it. CLIC then paid the $120,000 plus interest (or approximately $193,000 by July, 1986) into court.

The district court seems to have reasoned that Paramount's loan of $30,000 really had little or nothing to do with the $120,000 mortgage that FFSI had previously given as security. It concluded that if Paramount held any interest in the restaurant at all to secure its loan, that interest would have to have been some later created "interest in land", which had to be evidenced by a writing. R.I.Gen.Laws § 9–1–4(1) (1985). In fact, the district court may have thought that a commitment to give up to $120,000 to FFSI (secured by the $120,000 mortgage) had already been carried out (that FFSI had already received the $120,000), in which case Paramount's $30,000 would have represented an *additional* loan by a junior creditor who was trying to jump ahead of the SBA on the basis of an oral contract. The record, however, cannot support this interpretation.

■ Rather, the record indicates (and the parties, at oral argument, confirmed), that neither Utopia nor CLIC loaned FFSI any money in 1980 when FFSI wrote it a $120,000 note and mortgage. The loan was not "funded." (Perhaps the SBA did not realize this when it paid CLIC $120,000 out of the sale proceeds.) The note and mortgage therefore amounted to a promise to repay, and to secure, whatever money CLIC loaned FFSI up to, but not exceeding, $120,000. *People's Savings Bank in Providence v. Champlin Lumber Co.*, 106 R.I. 225, 258 A.2d 82 (1969); *Bagley v. Page*, 57 R.I. 186, 189 A. 39 (1937); *Blackmar v. Sharp*, 23 R.I. 412, 50 A. 852 (1901). The record also shows that in late 1980 Paramount gave CLIC $30,000 to lend to FFSI, subject to the previously executed $120,000 note and mortgage.

■ Since the parties intended to advance, and did advance, the $30,000 against the previously executed note and mortgage, we do not see how under Rhode Island law the SBA can claim the money. *People's Savings Bank in Providence*, 106 R.I. at 225, 258 A.2d 82; *Bagley*, 57 R.I. at 186, 89 A. 39; *Blackmar*, 23 R.I. at 412, 50 A. 852. The note and mortgage are in writing and properly recorded. *People's Savings Bank in Providence*, 106 R.I. at 225, 258 A.2d 82; *Bagley*, 57 R.I. at 186, 89 A. 39; *Blackmar*, 23 R.I. at 412, 50 A. 852. They entitle CLIC to as much of the $120,000 as was advanced; and CLIC advanced the $30,000 against the $120,000 security. CLIC owes the $30,000 to Paramount because Paramount advanced the money to CLIC with the understanding that CLIC would repay the $30,000 out of the mortgage proceeds. Rhode Island law does not require that the latter promise to repay be in writing. *Bagley*, 57 R.I. at 186, 89 A. 39. It is well established law that a promised assignment of a mortgage or of its proceeds to a third party is not an "interest in land" subject to the statute of frauds. *Restatement (Second) of Contracts* § 127, illustration 2 (1981); 2 *Corbin on Contracts* § 403 (1950). We recognize that the magistrate, who found the facts under 28 U.S.C. § 636(b)(3) (1982) did not characterize the facts in just this way, but simply said that "Paramount ... loaned FFSI $30,000" which loan "was secured by the $120,000 promissory note and mortgage." But there is no reason to believe the magistrate meant by this anything factually different than what we have described. Or, if he did, any such factual holding would be "clearly erroneous," *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182 (5th Cir.

1987); no significant factual matter is in dispute among the parties.

For these reasons, the judgment of the district court is *Reversed.* The $30,000 (plus interest) is to be paid to Paramount.

*So ordered.*