[1] Reported in 214 N.W. 503.
The Ambassador Holding Company, hereafter called holding company for brevity, was a corporation operated and managed by William A. Walters who held all the stock except the necessary qualifying shares issued to the two other officers. In 1922 the holding company purchased a tract of land at the intersection of Franklin avenue and Third avenue south in the city of Minneapolis upon which it erected a large apartment building at a cost of about $500,000. To finance its building project the holding company entered into a contract with the Federal Bond Mortgage Company, a corporation located at Detroit, Michigan, and hereafter called the mortgage company for brevity, whereby the mortgage company agreed to procure a loan for the holding company of $400,000 to be evidenced by *Page 447 
the coupon bonds of the holding company secured by a trust deed of the property. The trust deed, running to the mortgage company as trustee and Nathan M. Gross as cotrustee, was executed and placed on record on October 11, 1922. The bonds were executed and delivered to the mortgage company, which certified them as trustee and thereafter sold them and applied the proceeds in financing the project. A large number of mechanics' liens were filed against the property. In this suit the lien claimants seek to foreclose their liens and ask to have them adjudged prior and superior to the trust deed. The trustees interposed an answer and cross-bill in which they set forth the trust deed and ask that it be adjudged prior and superior to the liens and be foreclosed.
The court made extended findings and among other things found that the trust deed was prior and superior to the liens. Judgment was entered upon the findings, and certain of the lienholders appealed therefrom. The sole question presented is whether the trust deed is prior and superior to the liens.
Appellants claim that certain material had been placed on the ground before the recording of the mortgage and that the liens are entitled to priority for that reason. There is evidence to that effect and also evidence to the contrary, and the finding of the trial court that the mortgage was recorded before any material or labor had been furnished for the improvement is final upon that question.
Section 8494, G.S. 1923, provides:
"All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other incumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee or incumbrancer without notice, however, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material or machinery for such improvement, may file for record with the register of deeds of the county within which the premises are situated, * * * a brief *Page 448 
statement of the nature of such contract, which statement shall be notice of his lien for the contract price or value of all contributions to such improvement thereafter made by him or at his instance."
All liens attach from the time the first item of material or labor is furnished on the premises for the beginning of the improvement. As against the owner a lien may attach although no material or labor has been furnished on the ground. Lamoreaux v. Andersch, 128 Minn. 261, 150 N.W. 908, L.R.A. 1915D, 204.
"As against a bona fide purchaser, mortgagee or incumbrancer without notice, however, no lien shall attach prior to the actual and visible beginning of the improvement on the ground."
Appellants contend that the words "without notice" in this provision of the statute mean without notice of a contemplated improvement; and that where a mortgagee takes his mortgage with knowledge that the construction of an improvement on the property is contemplated, the mortgage is subject to any liens that may thereafter accrue by reason of the construction of such contemplated improvement. They concede that the case of Erickson v. Ireland, 134 Minn. 156, 158 N.W. 918, decided this point contrary to their contention, but insist that the rule as announced in that case is erroneous. We cannot sustain appellants' contention. To give the words such a meaning would not accord with the purpose of the statute to fix the relative rights and priorities of purchasers, incumbrancers and lienholders with definiteness and certainty. We think that the words "without notice" as there used mean without notice of an existing lien. As held in Lamoreaux v. Andersch, 128 Minn. 261,150 N.W. 908, L.R.A. 1915D, 204, liens may attach, at least as against the owner, although no item of material or labor has been furnished on the ground. We adhere to the rule as announced in the Erickson case.
Appellants further contend that the liens are prior and superior to the mortgage for the reason that the mortgage was not given to secure a present indebtedness, but to secure future advances; and that these advances, or the greater part of them, were voluntarily *Page 449 
made after the work was begun and the liens had attached. It is well settled that a mortgage may be given to secure future advances; and that such advances, at least if made pursuant to an agreement to make them, have priority over mechanics' liens which attached after the recording of the mortgage but before the making of the advances. Erickson v. Ireland, 134 Minn. 156,158 N.W. 918, and citations.
The contract between the mortgage company and the holding company covers 11 printed pages of the record. It begins with a statement that the mortgage company has agreed to arrange for the holding company, and the holding company has agreed to take, a loan of $400,000 to be evidenced by coupon bonds and secured by a trust deed. It sets forth the terms and provisions to be incorporated in the bonds and trust deed; also that the holding company is to erect a building on the land costing not less than $500,000; and also that the mortgage company is to hold the amount of the loan, less its commission and the necessary expenses, and pay it out direct to contractors, subcontractors and materialmen as the work progresses on orders of the holding company and receipt of waivers of mechanics' liens, such payments to begin when the construction of the building has progressed to such an extent and payments therefor have been made to such an extent that the money remaining in the hands of the mortgage company will be sufficient to complete the building. The bonds were delivered to the mortgage company, and that company sold them to investors and received the proceeds for the purpose of holding and applying them as provided in the contract. All except the stipulated commission and the authorized expenses were paid out toward the construction of the building and the removal of incumbrances on the property. The trust deed or mortgage having been recorded before the liens attached, the advances made thereunder, if made pursuant to an obligation to make them, are prior and superior to the liens. Several courts hold that such advances, even if made voluntarily, are prior and superior to all incumbrances arising after the recording of the mortgage.
The contract imposed upon the mortgage company the duty to procure the necessary funds and make the stipulated advances as *Page 450 
the building progressed. It cannot reasonably be construed as creating a mere option to make them. It created an obligation to make them; and the advances having been made pursuant to that obligation they take priority over the mechanics' liens. Whelan v. Exchange Tr. Co. 214 Mass. 121, 100 N.E. 1095; Kuhn v. Southern Ohio L. T. Co. 101 Ohio St. 34, 126 N.E. 820; Moroney's Appeal, 24 Pa. St. 372; Blackmar v. Sharp, 23 R.I. 412,50 A. 852; Erickson v. Ireland, 134 Minn. 156, 158 N.W. 918.
The contract provided that the mortgage company should begin making payments when the holding company had proceeded with the construction of the building to such an extent and had made payments thereon to such an amount that the funds to be furnished by the mortgage company would be sufficient to complete the building. The appellants urge that the evidence shows that the holding company failed to make payments in the specified amount, or in any considerable amount; that the failure of the holding company to make these payments released the mortgage company from the obligation to carry out the contract on its part; and that the payments made by the mortgage company should be deemed to have been made voluntarily and to be subordinate to the mechanics' liens for that reason. Although the evidence produced at the trial shows that the holding company had in fact failed to make the agreed payments, it does not follow that the mortgage company was not justified in carrying out the contract on its part, nor that the payments made in carrying it out lost their right of priority.
The trial court found that the holding company induced the mortgage company to "open up said loan," as it is termed by falsely representing that it had made payments toward the construction of the building in such amounts that the proceeds of the loan available for the completion of the building would be sufficient to complete it; that certain of the lien claimants, to aid the holding company in making these false representations, had executed fictitious contracts in which the prices stated were largely in excess of the true prices and in connection therewith had furnished receipts for payments and statements waiving all claims above the amounts named in such *Page 451 
statements, from which it appeared that large sums had been paid on the contracts when in fact nothing had been paid thereon and the amounts represented as unpaid balances were in truth the full contract prices; and that the mortgage company, in reliance upon the false representations of the holding company and believing them true, made the advances in good faith. There is no assignment of error attacking these findings as not sustained by the evidence. The appellants argue, however, that the facts which the mortgage company knew or ought to have known were sufficient to charge it with notice that the building could not be completed out of the proceeds of the loan. While it might suffice to say that the court not only found to the contrary but found that the mortgage company acted in entire good faith throughout, other matters presented and argued also lead to the conclusion that the advances made have precedence over the mechanics' liens.
The appellants were not parties to the contract between the holding company and the mortgage company and had no interest in or claim against the property when that contract was made. The conditions imposed on the holding company were not imposed for the benefit of the appellants, but for the benefit of the mortgage company and the purchasers of the bonds. Conditions may be waived by the parties for whose benefit they were imposed, and those who are strangers to such parties and to the transaction have no ground to complain because of such waiver.
Moreover the undertaking of a mortgagee to make future advances is not deemed optional within the rule which gives subsequent incumbrances priority over optional advances thereafter made, unless it appears from his contract, without resorting to extrinsic evidence, that he has the right to decline to make them. Where the right to refuse to make them depends upon a breach of the contract by the other party, the mortgagee is not required to take the chance of establishing such breach to the satisfaction of a court or jury, but may disregard it and make the stipulated advances in reliance on his security. Hyman v. Hauff, 138 N.Y. 48, 33 N.E. 735.
The trust deed was not given to secure a debt to the mortgage company, but to secure the payment of an issue of coupon bonds *Page 452 
which were intended to be sold and were sold to the public generally. The authorities are to the effect that advances made under such a trust deed or mortgage, even if not obligatory, have priority over all incumbrances arising subsequent to the recording of the trust deed; and that the rule which applies where voluntary advances are made by the mortgagee to the mortgagor under an ordinary mortgage does not apply where the mortgage secures coupon bonds which are payable to bearer and pass by delivery and have been sold to bona fide purchasers. The federal courts give such bonds priority as of the date of the mortgage securing them, although other liens had attached before they were sold. Claflin v. S.C.R. Co. (C.C.) 8 F. 118; Central Tr. Co. v. L. St. L. T. Ry. Co. (C.C.) 70 F. 282; Central Tr. Co. v. Bodwell W.P. Co. (C.C.) 181 F. 735; Allis-Chalmers Co. v. Central Tr. Co. (C.C.A.) 190 F. 700, 39 L.R.A. (N.S.) 84; P.C.C. St. L. Ry. Co. v. Long Island L. T. Co. 172 U.S. 493, 514,19 Sup. Ct. 238, 246, 43 L. ed. 528, 535. In the case last cited the United States Supreme Court said:
"That lien had its origin in the execution and delivery of the Parkhurst mortgage and the authentication by the trustee of the bonds named in it, and when any of those bonds became the property of a bona fide holder, the lien given to secure them related back to the date of the mortgage."
The rule is applied in state courts. Reed's Appeal, 122 Pa. St. 565, 16 A. 100; Central Tr. Co. v. Continental Ir. Wks. 51 N.J. Eq. 605,28 A. 595, 40 Am. St. 539; Central Tr. Co. v. Bartlett, 57 N.J.L. 206, 30 A. 583; Camden S.D. Tr. Co. v. Burlington Carpet Co. (N.J. Ch.) 33 A. 479; Roberts v. W.H. Hughes Co. 86 Vt. 76, 83 A. 807; Nelson v. Iowa Eastern Ry. Co. (Iowa) 8 Am. Ry. Rep. 82. On reargument of this last case it was found that the mechanic's lien had in fact attached before the recording of the mortgage and therefore had priority. Neilson v. Iowa Eastern Ry. Co. 44 Iowa, 71.
The doctrine stated seems to have originated in cases involving mortgages or trust deeds securing railroad bonds, but the cases make *Page 453 
no distinction between bonds issued for railway purposes and those issued for other purposes, and no reason appears for restricting the application of the rule to cases where the bonds are issued by railway companies. Some of the cases refer to the fact that the bonds there in question were negotiable; but where they are payable to bearer and pass by delivery, whether they are technically negotiable instruments within the law defining commercial paper would seem to be unimportant in determining whether they are entitled to priority as of the date of the recording of the mortgage securing them.
Some of the reasons given for the rule above stated are, that in order to float large loans it is necessary to divide them into small parts represented by bonds which are sold in different, and frequently in distant, markets; that such bonds are purchased in reliance on the security; that purchasers of such bonds in the different markets cannot reasonably be required to ascertain at their peril what, if any, liens have attached to the property since the recording of the instrument securing the bonds; that if such bonds, whenever sold, did not take precedence over all liens arising subsequent to the recording of the mortgage, the status of the bonds would be so uncertain that investors would be afraid to buy them as articles of commerce; that all bondholders, as between themselves, stand on an equal footing and have equal rights in the security without reference to the time at which they acquired the bonds; and that subsequent incumbrancers give credit with notice that the property has been pledged as security for bonds put out to be sold to the general public and dealt with as articles of commerce.
The contract provided that the holding company should furnish an abstract showing a marketable title free from incumbrances, but also gave the mortgage company the right to pay and discharge all existing incumbrances out of the proceeds of the loan. The property was subject to a purchase money mortgage of $50,000 which was prior and superior to all other liens. The mortgage company subsequently paid and satisfied this mortgage pursuant to an understanding with the holding company that they should do so when *Page 454 
construction work to that amount had been done on the building. The argument that the existence of this mortgage was such a breach of the contract that the mortgage company ought to have refused to carry it out is without force in view of the provision expressly authorizing the mortgage company to pay such incumbrances. The argument that the mortgage company knew, or ought to have known, that the funds remaining in its hands after paying this item would be insufficient to complete the building, and that the mechanics' liens should have priority over the mortgage on the ground that the advances thereunder were made after the holding company had breached the contract, has already been considered. We mention the matter of this mortgage because the appellants lay special stress upon it.
We find no other questions which require special mention in an opinion already too long.
We are satisfied that the learned trial court reached the correct conclusion and its judgment is affirmed.