AXEL NEWMAN HEATING & PLUMBING COMPANY v. JOHN
G. SAUERS AND OTHERS.
HARVEY J. DIEHL, RESPONDENT.
ST. PAUL FEDERAL SAVINGS & LOAN ASSOCIATION,
APPELLANT.[1]

May 4, 1951.

No. 35,359.

[1]Reported in 47 N. W. (2d) 769.

*Gustav C. Axelrod* and *Edward J. Cincera,* for appellant.
*Sanborn, Jackson & Biorn,* for respondent.

CHRISTIANSON, JUSTICE.

This appeal arises out of a mechanic's lien action wherein respondent, Harvey J. Diehl, asserted, and the trial court found, that his attorney's lien was prior and superior to mortgages held by appellant, St. Paul Federal Savings & Loan Association, as a claim against the real property involved therein. The latter appeals from an order denying its motion for a new trial.

Appellant is the assignee of mortgages executed by defendants John G. Sauers and Dorothy Sauers, husband and wife, on 14 lots owned by them and located in Ramsey county. The purpose of the mortgages, which were recorded on June 10, 1947, was to finance labor and materials for buildings which Mr. Sauers, a builder and contractor, was erecting on the lots. The mortgages were of the construction loan type, under which advances are made as the construction progresses.

Respondent is an attorney retained by the Sauerses to represent them in a total of 14 mechanic's lien foreclosure actions commenced against them on September 1, 1948, by the Axel Newman Heating & Plumbing Company. Appellant, as mortgagee of the lots, and various other mechanic's lien claimants were also named as defendants in these actions.

Respondent filed answers and performed various other legal services for the Sauerses of the agreed value of $1,528 in connection with the mechanic's lien proceedings. Appellant also filed answers therein through its own attorneys. Although prior to the trial all the mechanic's lien claims were settled with funds furnished by

appellant and charged by it to the mortgages, the actions were not dismissed.

In December 1948 more money was needed to complete the buildings, and the Sauerses executed to appellant new mortgages apparently of the same type on all but one of the lots, in amounts higher than those of the original mortgages. These subsequent mortgages were recorded on January 25, 1949.[2] Despite the availability of the additional funds, Sauers did not complete the houses, and none of the mortgages were satisfied of record. However, the trial court found that each of the subsequent mortgages was given in satisfaction of the prior mortgage on the respective lots. For purposes of this appeal, we shall assume such to be the fact.

On February 21, 1949, respondent recorded an attorney's lien statement against all the mortgaged lots and, in order to have the liens summarily determined, petitioned the district court for permission to intervene and file his own answers and become a defendant in the still pending mechanic's lien actions. By order of the court he was permitted to intervene. Before he filed his answer therein, appellant, pursuant to an order by Mr. Sauers, paid respondent $763 on his claim, and respondent released his lien on seven of the lots. Respondent then answered in the mechanic's lien actions in order to establish his attorney's lien for the balance of his claim against the seven remaining lots.

The trial court made findings and conclusions in favor of respondent. It ordered judgment by default against the Sauerses in the sum of $765 and determined that respondent's attorney's lien was prior and superior to all of appellant's mortgages, with the exception of the mortgage on the single lot having no subsequent mortgage. The present appeal involves only one of the mechanic's lien actions, the parties having stipulated that the decision rendered herein shall govern the other cases.

---

[2]None of the subsequent mortgages were offered in evidence. However, reference is made generally to them in the testimony and the abstract of title included in the record.

■ Respondent's attorney's lien was claimed against his clients' interest in the lots involved in the mechanic's lien proceedings, and under M. S. A. 481.13(6)[3] he was entitled to a summary determination of the lien in those proceedings. However, it does not follow that mechanic's lien characteristics may be imputed to the attorney's lien because of the nature of the determinative proceedings. Here, as in all other instances, the existence of the attorney's lien is governed by our attorney's lien statute, § 481.13.

Since the merit of respondent's claim was not put in issue, the major question for determination is whether respondent's lien or appellant's second set of mortgages has priority. Reference to clause

[3] "An attorney has a lien for his compensation whether the agreement therefor be expressed or implied:

\* \* \* \* \*

"(3) Upon the cause of action from the time of the service of the summons therein, or the commencement of the proceedings, and upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed, from the commencement of the action or proceedings, and, *as against third parties, from the time of filing the notice of such lien claim,* as provided in this section; [Italics supplied.]

\* \* \* \* \*

"(6) The liens provided by clauses (3), (4), and (5) of this section may be established, and the amount thereof determined, by the court, summarily, in the action or proceeding, on the application of the lien claimant or of any person or party interested in the property subject to such lien, on such notice to all parties interested therein as the court may, by order to show cause, prescribe, or such liens may be enforced, and the amount thereof determined, by the court, in an action for equitable relief brought for that purpose.

\* \* \* \* \*

"Such liens shall not affect the right or title of bona fide purchasers of encumbrancers of the property subject thereto, for value and without notice; but a duly verified notice of intention to claim such lien, specifying the property on which the lien is claimed, and the amount thereof, if under express agreement, or, if not, then the reasonable value of the services for which such lien is claimed, filed as herein provided, shall charge subsequent purchasers and encumbrancers of such property with notice of said lien from the time of such filing."

(3) of the statute indicates that the type of charging lien claimed by respondent attaches as against the client's interest from the commencement of the action or proceeding, but as against third parties from the time a notice of lien claim is filed. Respondent's notice of lien claim was not filed until February 21, 1949, and therefore can serve as constructive notice from that day forward only. This was almost a full month after appellant recorded the second set of mortgages on January 25, 1949. There is no finding or contention that prior to the recording of those mortgages appellant had actual knowledge that respondent claimed a lien on the property then involved in the mechanic's lien proceedings.

Respondent contends, however, that because appellant was a party to the proceedings in which respondent performed the services for which he claims his lien, appellant was charged with constructive notice of the lien, and therefore, as against it, the liens attached from the commencement of the proceedings and intervened between the two sets of mortgages.

Our attorney's lien statute is a substitute for the common-law attorney's lien rules. Akers v. Akers, 233 Minn. 133, 46 N. W. (2d) 87. It provides a method for giving constructive notice which if followed will constitute effective notice to all subsequent purchasers and encumbrancers. No alternative method is provided, and the method prescribed must be taken as exclusive. To hold otherwise would obviate what appears to be a legislative intent to fix the relative rights and priorities of purchasers, encumbrancers, and lienholders with definiteness and certainty. Cf. Landers-Morrison-Christenson Co. v. Ambassador Holding Co. 171 Minn. 445, 214 N. W. 503, 53 A. L. R. 573. Since appellant had recorded the last set of mortgages before respondent filed his notice of attorney's lien claim, appellant, in the absence of a showing of actual notice, is in the position of a bona fide encumbrancer for value and without notice, and its claim against the lots in question, at least for advances previously made, must be given priority over respondent's attorney's lien.

■ Respondent also contends that appellant is estopped from as-

serting a priority because at the time the partial payment of the claim was made one of the appellant's officers promised respondent that the balance of his claim would be the first lien on the land. At that time, respondent released his lien on seven of the lots. This contention must fail, because respondent has failed to prove an essential element of estoppel—that he was prejudiced by changing his position in reliance on this representation. Froslee v. Sonju, 209 Minn. 522, 297 N. W. 1; Schaefer v. Nylin, 162 Minn. 170, 202 N. W. 439; 2 Dunnell, Dig. & Supp. § 3192.

■ The question still remains whether respondent's lien is entitled to priority over advances made by appellant after the date the lien attached. This is dependent upon whether such advances were obligatory or optional on the part of appellant. Where obligatory advances are made pursuant to a mortgage to secure future advances, the advances have priority over encumbrances attaching after the recording of the mortgage but before the advances are made. Landers-Morrison-Christenson Co. v. Ambassador Holding Co. supra; Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918. However, where the advances are optional, the subsequent encumbrance will take priority over all advances made after the mortgagee receives actual notice of the subsequent encumbrance. Finlayson v. Crooks, 47 Minn. 74, 49 N. W. 398, 645.

Respondent argues that the advances in the instant case were admittedly optional because of the following statement appearing in appellant's brief:

"* * * At no time was the appellant bound to make any payments or any advances unless they were for labor or materials performed or furnished upon the mortgaged premises."

Even assuming that appellant would be bound by this statement, the "admission" is not material to this appeal, because, except for $763 paid respondent and the amounts appellant applied to pay interest due on the mortgages and FHA insurance, it does not appear that any payments other than of this nature were made. The

question is whether, under its contract with the mortgagors, appellant was obligated to make payments of the kind it in fact made.

Since the present record does not disclose the terms of the subsequent mortgage contracts or what appellant's rights and obligations were with respect to future advances, the order of the trial court must be reversed with directions for further proceedings in accordance with the views herein expressed.

Reversed.

