MODEL HOME BUILDING, INC. v. ARTHUR E. TURNQUIST
AND OTHERS.
ST. PAUL FEDERAL SAVINGS & LOAN ASSOCIATION,
APPELLANT.

102 N. W. (2d) 717.

April 29, 1960—No. 37,882.

*Gustav C. Axelrod,* for appellant.

*Johnson & Sands* and *James D. Rogers,* for plaintiff respondent.

*Beaudoin, Thuet, Todd & Pavlak,* for respondent R & L Lumber Company, d.b.a. Johnson Cashway Lumber Company.

KNUTSON, JUSTICE.

This is an appeal from an order of the district court denying a motion for a new trial.

The facts are not in dispute. On and prior to September 16, 1955, defendants Arthur E. Turnquist and Jane A. Turnquist were the owners of a tract of land situated in Chisago County, Minnesota, used as their homestead. The description of the land is immaterial. On September 16, 1955, defendants Turnquist executed and delivered a mortgage

upon these premises to St. Paul Federal Savings and Loan Association securing the sum of $3,000. The mortgage was recorded on September 21, 1955. On July 27, 1956, the Turnquists executed and delivered another mortgage to the same mortgagee securing the sum of $1,700. This mortgage was recorded on August 13, 1956.

On September 29, 1957, a fire occurred which substantially damaged the buildings on the mortgaged premises. On that date the amount due St. Paul Federal Savings and Loan Association on the two mortgages was $4,548.52.

Defendant J. B. Weisser Lumber Company, Inc., had done some work on the premises, which was completed before the fire occurred. Plaintiff and defendant R & L Lumber Company, doing business as Johnson Cashway Lumber Company, supplied material and labor at the request of defendants Turnquist to repair the dwelling damaged by the fire.

On or about December 31, 1957, St. Paul Federal Savings and Loan Association received the sum of $3,210.17 from the proceeds of a settlement of fire insurance carried on the premises as a result of the fire loss, and this sum was credited to the amount due on the mortgages, then leaving a balance of $1,423.11. At that time defendants Turnquist were indebted to St. Paul Federal Savings and Loan Association in an amount that was unsecured in addition to the amount secured by the mortgages.

This action was commenced on March 5, 1958, for a foreclosure of the mechanics lien filed by plaintiff. On August 13, 1958, defendants Turnquist requested St. Paul Federal Savings and Loan Association to return to them $2,112.51 of the money paid from the proceeds of the fire insurance in order that it might be credited to the unsecured indebtedness owed by the Turnquists to St. Paul Federal Savings and Loan Association under the terms of a written agreement which reads:

"On this 12th day of August, 1958, Arthur E. Turnquist and Jane A. Turnquist acknowledge receipt of the sum of Two Thousand One Hundred Twelve and 51/100 Dollars ($2,112.51) paid by the St. Paul Federal Savings and Loan Association concurrently herewith and

that said amount is a refund of a prepayment which had been credited to their loan with said Association, being Loan No. 4574, and agree that the mortgage dated Sept. 16, 1955, July 27, 1956, and recorded in Book 49/52, at Page 279/15 of the Records of the Register's Office of Chisago County, Minnesota, secures the balance of said loan, after debiting the amount of this refund, in the same amount and to the same extent had said prepayment never been made and refunded, and agree to pay the balance due on the note secured by said mortgage including the amount of this refund. Above refund to be applied as follows:

"1.  B-522-833.47
"2.  B-531-330.47
"3.  B579-948.57
"Less rebate to be applied on B570."

The only question involved here is whether St. Paul Federal Savings and Loan Association, by virtue of its mortgages, has priority over the mechanics lienholders in the amount of $3,708.51 or in the amount of $1,522.87.[1]

The trial court held in favor of the lienholders on three different theories. We need consider only one. When the proceeds from the fire insurance were applied on the mortgages held by St. Paul Federal Savings and Loan Association, reducing the unpaid balance thereon to $1,423.11, the rights of the parties became fixed as of that time. The mortgagee could not thereafter voluntarily enlarge the mortgage indebtedness to the detriment of subsequent lienholders without their consent.[2]

St. Paul Federal Savings and Loan Association contends that under a clause in the notes secured by the mortgages reading:

---

[1]This amount includes the item of $1,423.11 to which the mortgage had been reduced, plus certain obligatory payments made by the mortgagee.

[2]Finlayson v. Crooks, 47 Minn. 74, 49 N. W. 398, 645; Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918; 57 C. J. S., Mechanics' Liens, § 205b; 59 C. J. S., Mortgages, §§ 230a(2), 276b.

"The holder may rearrange, adjust, and extend the times and amounts of payments of interest and/or principal of this note by agreement with the present or subsequent owner of the real estate securing the same, without notice to or consent of and without releasing any party liable hereon,"

it could enlarge the mortgage indebtedness at any time up to the full amount of the mortgage notes and claim priority for the advances so made as against subsequent lienholders. The quoted clause is not open to that construction. We recognize the rule that where a mortgage is given to secure future advances, which in fact are later made, the mortgage has priority over mechanics liens attaching after the mortgage is given but before such advances are made if the advances are obligatory upon the mortgagee under the terms of the mortgage.[3] The same rule would apply to payments made pursuant to the terms of the mortgage to preserve the security, such as taxes and insurance premiums. However, it is only where the payments are obligatory under the mortgage that advances made subsequent to the attachment of mechanics liens carry with them priority over such liens. The advance made here was entirely voluntary, and the trial court correctly held that the mechanics liens take priority over such advance.

We need not consider the other points raised by the briefs.

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[3]Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918.