SHAW ACQUISITION COMPANY, d/b/a Stewart Lumber Company, Respondent,

v.

The BANK OF ELK RIVER, Petitioner, Appellant.

No. C2–00–1803.

Supreme Court of Minnesota.

March 7, 2002.

Rehearing Denied April 10, 2002.

James M. Neilson, Matthew A. Anderson, Babcock, Neilson, Mannella, La-

Fleur & Klint, P.L.L.P., Anoka, for Appellant.

Mark J. Johnson, Lang, Pauly, Gregerson, & Rosow, Ltd., Minneapolis, for Respondent.

Gerald G. Workinger, Jr., Edina, for Amici Curiae Minnesota Bankers Association, Mortgage Bankers Association of Minnesota, and Independent Community Bankers of Minnesota.

## OPINION

PAGE, Justice.

██ This case presents the issue of whether, under Minn.Stat. §§ 580.10 (2000) and 580.225 (2000), the junior portion of a split-priority mortgage,[1] must be satisfied before an intervening mechanic's lien in the second-priority position is satisfied. The court of appeals affirmed summary judgment for the mechanic's lienor. We affirm.

Allied Mortgage of Brooklyn Center, Inc. (Allied Mortgage), owned two adjoining parcels of land in Mille Lacs County, Minnesota—the "North Property" and "South Property" (collectively, the Properties). On March 5, 1998, Allied Mortgage executed and delivered to The Bank of Elk River (Bank) a note for each property in the amount of $105,000. To secure payment of the notes, Allied Mortgage also executed and delivered to the Bank a mortgage on each property. Allied Mort-

---

1. Split-priority mortgages generally arise in the context of the application of the obligatory-optional advance rule. Under this rule, a mortgage that is given to secure obligatory future advances takes priority over mechanics' liens that attach after the mortgage is given but before the advances are made. *Axel Newman Heating & Plumbing Co. v. Sauers,* 234 Minn. 140, 145, 47 N.W.2d 769, 772 (1951); *Erickson v. Ireland,* 134 Minn. 156, 158, 158 N.W. 918, 919 (1916). When the advances are optional, however, the mechanics' liens take priority over advances that are made after the mortgagee receives actual notice of the mechanics' liens. *Axel Newman Heating & Plumbing Co.,* 234 Minn. at 145, 47 N.W.2d at 772; *see Finlayson v. Crooks,* 47 Minn. 74, 79, 49 N.W. 398, 400 (1891).

gage and the Bank did not enter into a written construction loan agreement of any type for either property. Shaw Acquisition Company, doing business as Stewart Lumber Company (Stewart Lumber), supplied lumber and other building materials for the North Property and plans and specifications for the South Property.

On January 26, 1999, Stewart Lumber commenced a mechanic's lien foreclosure action (Underlying Litigation) in Mille Lacs County District Court seeking to foreclose on its mechanic's lien against the Properties. In February 2000, Stewart Lumber and the Bank entered into a stipulation containing what the stipulation called "Findings of Fact" and "Conclusions of Law." As part of the stipulation, Stewart Lumber and the Bank agreed to have the district court adopt the stipulation as its Findings of Fact, Conclusions of Law and Order for Judgment.

Pursuant to the stipulation, the district court found that the first actual and visible improvements to the Properties occurred on March 23, 1998, and Stewart Lumber's mechanic's lien attached to the parcels jointly on that date. Before March 23, 1998, the Bank made advances in the amount of $61,731.41 on the North Property note and $36,731.41 on the South Property note. After March 23, 1998, the Bank made additional advances in the amount of $43,268.59 on the North Property note and $68,268.59 on the South Property note. As of January 6, 2000, the total amount of principal and interest and real estate taxes due to the Bank for the North Property was $118,880.51 and $118,929.79 for the South Property.

The district court found, in accordance with the stipulation, that the principal advances made on the two notes before March 23, 1998, and the advances for real estate taxes were superior to Stewart Lumber's mechanic's lien and that advances made after that date were subordinate and, thus, junior to Stewart Lumber's mechanic's lien. The court also found, in accordance with the stipulation, that Stewart Lumber was entitled to a mechanic's lien in the amount of $43,253.76, plus statutory interest. The district court entered judgment on March 3, 2000, and neither party appealed.

On March 23, 2000, there were two mortgage foreclosure sales, one each with respect to the North Property and the South Property. The highest bidder and purchaser at each sale was the Bank, which bid $122,653.42 for the North Property and $122,779.32 for the South Property. Each bid represented the full amount of the mortgage indebtedness, plus costs, fees, interest, and taxes for the property purchased.

On April 12, 2000, Stewart Lumber filed a summons and complaint in Mille Lacs County District Court seeking a judgment against the Bank for the amount of its lien on the Properties, plus interest, costs, and disbursements. That same day, the Bank recorded notices of intent to redeem from its third-priority positions, although it appears from the record that the Bank never actually redeemed. Subsequently, the parties filed cross-motions for summary judgment and, on September 14, 2000, the court entered summary judgment in favor of Stewart Lumber. Adopting the arrangement of priorities adjudicated in the Underlying Litigation, the court concluded that the foreclosure sale of each property produced a surplus in excess of the Bank's first-priority position and that Stewart Lumber was entitled to judgment against the Bank in the amount of its mechanic's lien, plus interest from the date of the foreclosure sale. The court of appeals affirmed, holding that "[t]he district court properly granted [Stewart Lumber's] motion for summary judgment and properly

ordered that proceeds from the foreclosure sales in excess of [the Bank's] first-priority mortgages be distributed to satisfy [Stewart Lumber's] second-priority mechanic's lien." *Shaw Acquisition Co. v. Bank of Elk River,* 627 N.W.2d 365, 369 (Minn.App. 2001). We affirm.

■ At issue is whether the Bank's bid at the foreclosure sale resulted in a surplus, under Minn.Stat. § 580.10, from which Stewart Lumber can satisfy its mechanic's lien. Statutory construction is a question of law, which this court reviews de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn. 1990). Section 580.10 provides:

> In all cases not provided for in section 580.09 [foreclosure of mortgage installments], if, after sale of any real estate, made as herein prescribed, there remains in the hands of the officer making the sale any surplus money, after satisfying the mortgage, with interest, taxes paid, and costs of sale, the surplus shall be paid over by such officer, on demand, to the mortgagor, the mortgagor's legal representatives or assigns.

The Bank contends that its bid at the foreclosure sale did not create a surplus under the statute. In support of this contention, the Bank makes a number of arguments. The Bank argues that the plain language of section 580.10 dictates that there is no surplus until the mortgage has been satisfied in full, regardless of whether the mortgage has a split priority. The Bank argues that the court of appeals' interpretation of the statute leaves the holder of a split-priority mortgage without protection. It contends that, on the one hand, if the mortgagee bids only the amount in the first-priority position at the foreclosure sale, that priority position would be forfeited because Minn.Stat. § 580.225 provides that "[t]he amount received from foreclosure sale under this chapter is full satisfaction of the mortgage debt." On the other hand, if, as here, the mortgagee bids the full amount of the mortgage debt, the result of the ruling of the court of appeals is that the mortgagee has protected the holder of the intervening lien instead of its own lower-priority position. The Bank argues that this interpretation puts mortgage lenders in a "Catch 22" situation that will make them less amenable to providing construction loans. Finally, the Bank argues that a split-priority mortgagee may redeem from the junior portion of its lien.[2]

We note that section 580.10 does not define the term "surplus"; nor does the language "after satisfying the mortgage" indicate that the term "mortgage" refers to the full mortgage indebtedness as opposed to the senior portion of a split-priority mortgage. While this court has not had occasion to define the term "surplus" under section 580.10, we have addressed the distribution of foreclosure sale proceeds in cases involving split-priority mortgages. *See, e.g., Finlayson v. Crooks,* 47 Minn. 74, 79, 49 N.W. 398, 400 (1891) (disallowing mortgagee to claim benefit of security for junior portion of split-priority mortgage); *cf. Home Lumber Co. v. Kopfmann Homes, Inc.,* 535 N.W.2d 302, 304 (Minn.1995) (restating obligatory-optional advance rule).

---

**2.** The Bank also argues that Stewart Lumber does not have a claim to the proceeds of the foreclosure sale because the mortgagor, of whom Stewart Lumber is the assignee, does not have a claim to the proceeds. This contention is inconsistent with the district court's March 3 judgment. That judgment, from which no appeal was taken, declared that Stewart Lumber was entitled to a mechanic's lien against the Properties. That judgment is the law of the case.

■ When property is sold under the execution of the power of sale, the proceeds of the sale stand in place of the property sold. *Carlson v. Headline*, 100 Minn. 327, 330, 111 N.W. 259, 260 (1907); *see Ness v. Davidson*, 49 Minn. 469, 477, 52 N.W. 46, 47 (1892). Liens transfer from the security sold and attach to the proceeds, out of which the secured debts must be paid. *Hage v. Drake Marble & Tile Co.*, 145 Minn. 113, 115, 176 N.W. 192, 193 (1920). We have stated that "[t]he rights of the parties, as they before existed, are not transposed by the sale, and the court will apply the fund in accordance with their rights as they existed in respect to the land." *Brown v. Crookston Agric. Ass'n*, 34 Minn. 545, 546, 26 N.W. 907, 907 (1886); *see, e.g., Finlayson*, 47 Minn. at 79, 49 N.W. at 400.

■ Here, the Bank stands precisely as if the district court had declared that the advances the Bank made under its mortgages were optional, as opposed to obligatory. *See, e.g., Model Home Bldg., Inc. v. Turnquist*, 258 Minn. 53, 56, 102 N.W.2d 717, 719 (1960); *Finlayson*, 47 Minn. at 79, 49 N.W. at 400. As the Bank itself summarized, its "loan advances were optional, and that part of each mortgage was in first priority position, [Stewart Lumber's] mechanic's lien was in second priority position, and the remainder of each mortgage was in third priority position." If we apply our common law rule that priority with respect to the land governs priority with respect to the proceeds, we arrive at the conclusion that Stewart Lumber is entitled to satisfaction of its mechanic's lien once

the Bank has received satisfaction of the portions of its mortgages in the first-priority positions. *See L.M. Sullivan Co. v. Essex Broadway Sav. Bank*, 117 N.H. 985, 380 A.2d 1087, 1089 (1977) (permitting satisfaction of mechanic's lien before satisfaction of junior portion of a split-priority mortgage). After Stewart Lumber has received satisfaction for its mechanic's lien, the Bank may claim satisfaction for the portions of its mortgages in the third-priority positions.

■ Unless statutory provisions instruct otherwise, the conclusion we reach under the common law will stand. We "presume[ ] that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn.2000); *see also Bloom v. Am. Express Co.*, 222 Minn. 249, 253, 23 N.W.2d 570, 573 (1946) (stating that statutes in derogation of the common law must be strictly construed). The Bank contends that sections 580.10 and 580.225 plainly and unambiguously provide that the full mortgage indebtedness must be satisfied before a surplus can exist. As we noted earlier, however, section 580.10 does not define "surplus" and does not indicate that the term "mortgage" refers to the full mortgage indebtedness as opposed to the senior portion of a split-priority mortgage. Section 580.225 also does not specifically address split-priority mortgages; nor does it contain a clear mandate that the full mortgage indebtedness must be satisfied regardless of priority.[3] Thus, we cannot

---

**3.** As stated earlier, section 580.225 provides, "The amount received from foreclosure sale under this chapter is full satisfaction of the mortgage debt, except as provided in section 582.30." The language of that statute, given its ordinary meaning, appears to provide that a mortgagee having foreclosed upon its mortgage once cannot return to press the debtor

for more money. *See State v. Maidi*, 520 N.W.2d 414, 420 (Minn.App.1994) (Amundson, J., concurring in part, dissenting in part) (observing that section 580.225 was an attempt "to prevent economic serfdom by outlawing deficiency judgments in mortgage foreclosure actions"), *aff'd*, 537 N.W.2d 280 (Minn.1995); *see also National City Bank of*

say with any certainty that the legislature intended either section 580.10 or 580.225 to abrogate the common law rule expressed in *Brown*, 34 Minn. at 546, 26 N.W. at 907, as it relates to the distribution of the proceeds of a foreclosure sale.

The Bank asserts that a parade of horribles will beset the mortgage industry if we do not uphold the priority of all advances made under a mortgage over competing mechanic's lien claims. We recognize that the obligatory-optional advance rule, under which some mortgage advances may be denied priority in preference of intervening mechanics' liens, is the subject of much criticism. *See* 5 Richard R. Powell, *Powell on Real Property* § 38.16[1], at 38–119 (Michael Allan Wolf ed., 2001) ("The obligatory-optional advance rule has been criticized as over protective of local tradesmen and suppliers and unduly prejudicial against lending institutions."); Robert Kratovil & Raymond J. Werner, *Mortgages for Construction and the Lien Priorities Problem—The "Unobligatory" Advance*, 41 Tenn. L.Rev. 311, 321–22 (1974). We note, however, that the resolution of this case does not turn on the application of the obligatory-optional advance rule, but on the stipulation that the parties drafted and the district court adopted in its Findings of Fact, Conclusions of Law and Order for Judgment. As such, the facts of this case do not present us with the opportunity to reconsider the obligatory-optional advance rule, which is the true subject of the Bank's complaint.

The solution under Minnesota law for a construction lender seeking to protect itself from the loss of its mortgage's priority is to enter into a written construction loan agreement making all advances obligatory. *See Landers–Morrison–Christenson Co. v. Ambassador Holding Co.*, 171 Minn. 445, 449, 214 N.W. 503, 505, (Minn.1927) ("It is well settled that a mortgage may be given to secure future advances; and that such advances *at least if made pursuant to an agreement to make them*, have priority over mechanics' liens which attached after the recording of the mortgage but before the making of the advances.") (emphasis added). Here, the Bank failed to have any construction loan agreement.

Finally, we note that it is not necessary to address whether the junior portion of a mortgage may be redeemed. Although the Bank filed notices of intent to redeem from its third-priority positions, there is no evidence in the record that it did redeem. Not having the issue squarely before us, we decline to address it.

Affirmed.

GILBERT, J., took no part in the consideration or decision of this case.

---

*Minneapolis v. Lundgren*, 435 N.W.2d 588, 591–92 (Minn.App.) (interpreting section 580.225), *rev. denied* (Minn. Mar. 29, 1989). This meaning of section 580.225 does not conflict with our common law rules, which permit split-priority mortgages and require the distribution of sale proceeds according to the rights of the parties, as they existed against the land.