# TWENTY ASSOCIATES, INC. v. FIRST NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS.[1]

June 4, 1937.

No. 31,394.

[1]Reported in 273 N. W. 696.

A. C. Johnston and George A. French, for relator.
Kingman, Cross, Morley, Cant & Taylor, for respondent.

JULIUS J. OLSON, JUSTICE.

This case comes before us for review upon *certiorari*. There is no settled case or bill of exceptions. Instead we have been furnished with the files of the clerk of the court below. From these the following facts appear:

On July 1, 1924, petitioner-relator (hereinafter referred to as plaintiff) executed and delivered to respondent (hereinafter referred to as defendant) a mortgage or trust deed upon certain improved real estate in Minneapolis to secure the payment of a loan of $100,000. On June 15, 1934, plaintiff was in default in respect of payment of interest on the mortgage, also in failing to pay certain taxes theretofore levied and assessed against the premises. Such proceedings were thereupon had that on July 30 the premises were sold on foreclosure to defendant for $106,920. On July 17, 1935, plaintiff made, and on July 18 caused to be filed with the clerk of the court below, a petition with notice of motion returnable August 9, that year, wherein it was sought to have the court extend the period of redemption to March 1, 1937; also that the court determine "the reasonable value of the income of said property and directing your petitioner to pay such income, or such part thereof, in or toward the payment of taxes, insurance, interest and/or mortgage indebtedness, at such times and in such manner, as the Court shall fix and determine." That matter came before the court on the return day, at which time counsel and the parties appeared and there submitted the entire matter. On August 19 the court made its findings and order in substance as follows: That the amount due defendant upon its sheriff's certificate was "approximately $112,867.36. The total amount aforesaid, with the taxes and interest and penalties added is approximately $142,875.47;" and further that, "The present value of the property was variously esti-

mated at from $125,000 to $200,000 by the witnesses testifying for the parties." But the court was of opinion that plaintiff was possessed of a "substantial equity in said premises above the amount required to redeem *from the first mortgage,* including interest, insurance, and all taxes with interest and penalties thereon." In addition to the first mortgage, the court also found that there was a second mortgage or trust deed upon the same premises still outstanding and unpaid in "the principal amount of $36,000, a large portion of which is owned by stockholders of petitioner." By its order the court directed that plaintiff operate and manage the premises and keep the buildings and improvements thereon in good and tenantable condition. It was to collect the income from the premises and apply the same to the payment of necessary and reasonable expenses incurred in the operation thereof; further, that on the last day of each month thereafter plaintiff should pay to defendant all of the income received from the premises after deducting the necessary and reasonable operating expenses paid by it. Direction was also made respecting the manner in which defendant was to apply the amount so paid to it. Plaintiff was required to "keep accurate account of its receipts and expenditures hereunder" and was to furnish to defendant a statement thereof. The time within which redemption might be made was, according to the order aforesaid, "extended to and including June 30, 1936, pursuant to and subject to all of the terms, conditions, and limitations of Chapter 47, Laws of Minnesota for 1935."

The next instrument in the file is a stipulation entered into between the parties, which, omitting venue and title, reads as follows:

"It Is Hereby Stipulated and Agreed by and between the parties to the above entitled action, that the time for redemption from the foreclosure sale described in the court's order herein, dated August 19, 1935, extending the time to redeem from said sale to and including June 30, 1936, may be further extended to March 1, 1937, upon the same terms and conditions of payment and otherwise, as contained in said order of August 19, 1935, for the extended period, and upon the following additional conditions:

"First: That this extension shall be final, whether the so-called Minnesota Moratorium Law be renewed or extended, or not, and

"Second: That all gas ranges and refrigerators belonging to petitioner and now in the apartment building on said premises be considered a part of the realty for the purpose of the aforesaid foreclosure and redemption therefrom, and that all of the same shall be left on said premises by petitioner in the event that it does not redeem from the said sale.

"It is further stipulated that the court may make and file the hereto attached order.

"Dated: June 24, 1936."

(Plaintiff executed this stipulation in its own corporate behalf, and it was also executed for it by its attorney of record. Defendant's attorneys executed the same in behalf of defendant.)

On the next day and in strict conformity with the stipulation, the court adopted the stipulation as and for its order.

Thereafter on February 26, 1937, plaintiff served notice of motion with supporting petition for additional time (*i. e.*, to March 1, 1939) within which to redeem the premises, pursuant to the provisions of L. 1937, c. 21. It recited as the only additional reason for a further moratorium, "That although government agencies have acted to release money and credit for smaller loans mostly for residential properties no money or credit is yet available for the refinancing, either in whole or in part of such properties as herein described. That this petitioner believes that if given an opportunity to occupy and manage said properties for an additional period of two years that a sale may be made or money secured for refinancing which will enable said petitioner to obtain a reasonable price for its equity therein." That matter was made returnable March 25, 1937. On March 13, counsel for defendant appeared before the court upon due notice to plaintiff and moved that proceedings be dismissed, its claim being that the stipulation hereinbefore referred to and the order of the court adopting the same ended the court's jurisdiction respecting consideration of further moratorium. The court was of the same opinion and granted the motion to dismiss. The propriety of this order is the single issue presented for decision.

Plaintiff's position on this appeal may be summarized thus:

(1) That the stipulation and the order of the court adopting it "operated on something the legislature might create in the future, the privilege of applying for an extension of time to redeem from March 1, 1937. The effect of the clause was to provide in advance that the legislature may not pass an act which would give such a privilege in this case."

(2) That the 1937 moratorium act is made applicable to every mortgage, there being no exception to situations such as plaintiff's, hence that "where the parties stipulated and the court ordered that the extension was to be final, the act applied to it, and the result was that the effect of such provisions were abrogated and made a nullity. The legislature may impair and render inoperative previous contracts and rights of persons in passing laws in the exercise of its police power."

(3) That "in any event, the court had no authority or power to provide in the order that the extension was to be a final one, and insofar as the order so provides it is beyond the power of the court, because its power to deal with this subject matter and to make extensions of time to redeem is derived from the 1935 Moratorium Act, and that act does not give it such power and authority."

■ In O'Connor v. Schwan, 190 Minn. 177, 179, 180, 251 N. W. 180, 181, Chief Justice Devaney fully covered the question respecting the right of a mortgagor to convey his equity of redemption to the mortgagee. The opinion states:

"It is firmly established that a mortgagor may not, at the time of, nor as a part of the mortgage transaction, bargain away his equity of redemption. Any attempt by the mortgagor so to do will not be enforced by a court of equity. So a deed, absolute on its face, if given to secure a debt, will be construed by a court of equity as a mortgage. [Citing cases.] Similarly, an absolute deed with a contract for deed back, if shown to have been given to secure a debt, will be held to be a mortgage. Holien v. Slee, 120 Minn. 261, 139 N. W. 493.

"However, it is settled equally well that a mortgagor may bargain away, sell, or convey to the mortgagee his equity of redemption subsequent to the time that he executed the mortgage [citing cases], provided that such a conveyance is not made pursuant to a collateral agreement contemporaneous with the execution of the mortgage. [Citing cases.]

"The courts will, however, scan such a transaction carefully to see that the mortgagee took no undue advantage of the mortgagor's necessities. From the early case of Niggeler v. Maurin, 34 Minn. 118, 124, 24 N. W. 369, 372, down to the present time, this court has expressed a steadfast determination to see that the transaction by which the mortgagor parts with his equity of redemption is untainted by oppression or overreaching. The court always has looked with jealousy at these transactions, 'especially where the mortgagor is a needy man, and when there is pressure and inequality of position, and the sale has been at an undervalue.' "

Thus in DeLancey v. Finnegan, 86 Minn. 255, 261, 90 N. W. 387, 390, this court said:

"The mortgagee may always purchase from the mortgagor his right of redemption, for a fair consideration, if the transaction is untainted by any oppression or advantage taken by the mortgagee of the necessities of the mortgagor. Equity will scan sales of the equity of redemption with jealous care, and require their fairness to be clearly established."

■ The effect of the stipulation of settlement and the court's order adopting it is well illustrated in Locke v. Darelius, 140 Minn. 206, 168 N. W. 24, 25, where the syllabus, well sustained by the decision, reads:

"The plaintiff mortgaged certain property which he owned and under foreclosures the defendants acquired apparent legal title. The plaintiff claimed that the foreclosures were premature and the defendants' title invalid. In an action to obtain possession brought by the defendant against the plaintiff it was stipulated by way of settlement that if the plaintiff would surrender possession without a writ of ouster the defendant would give him a contract of sale

for the property upon terms then agreed upon. Possession was accordingly surrendered and the contract was executed. It is *held* that the contract measures the rights of the parties and that the plaintiff is not entitled to redeem upon the theory that the defendant waived the rights acquired under the foreclosures and was a mortgagee in possession, nor upon the theory that the mortgage relation was continued and the time of payment of the mortgage indebtedness extended, nor upon the theory that there was an avoidable release of the equity of redemption."

There, as here, "the stipulation was a settlement of the controversy. * * * That the parties made a settlement is clear. That settlement did not recognize nor create a mortgage relation but ended a controversy by establishing the precise relations of the parties. Thenceforward their rights were measured by the contract of sale." (140 Minn. 207-208.)

In State ex rel. Bassin v. District Court, 194 Minn. 32, 33, 34, 259 N. W. 542, 543, "the period for redemption was to expire June 13, 1934. Before that date an application for extension was made, and it came up before the district court on June 28, 1934. The court, on June 29, 1934, found that the parties had made a settlement on June 28 in regard to the extension by agreeing that the period of redemption should be extended to 12 o'clock midnight of July 31, 1934, *and no longer,* and that during the extension period petitioner should have a right to receive and retain the rents from the apartment house on the premises. There was also an agreement that the petitioner should have $100.00 for a mechanical stoker then located on the premises. According to the findings subsequently made by the court, the petitioner was present and agreed to the terms of the settlement. * * * We think this was a binding settlement of the litigation notwithstanding the terms had not been incorporated in a written stipulation or memorial of the completed settlement. That stipulation was to be merely a convenient record of the definite and binding contract entered into in open court, and its absence does not affect the binding force of the contract." Citing cases.

Also of value here is Tankel v. Union Central L. Ins. Co. 196 Minn. 165, 264 N. W. 693. There plaintiff set in motion a moratorium proceeding and procured an *ex parte* order to the effect that the foreclosure proceedings then pending be postponed "until the further order of this court." On the return day of the notice of motion, plaintiff not appearing, the cause was dismissed. The court ordered that the foreclosure sale be had in conformity with the published notice of sale although only four publications had been made. The sale was had accordingly, defendant purchasing the premises. Later plaintiff brought suit to set aside the foreclosure, the basis for his attack being that the notice was published only four times instead of the six publications required under the provisions of 2 Mason Minn. St. 1927, § 9604. There, as here, no effort was made to vacate or set aside the order of the court directing the sale. We said (196 Minn. 169-170, 264 N. W. 695-696) :

"There can be no denial that the court had jurisdiction of the subject matter and of the parties. It seems equally plain that the court, in view of this jurisdiction, necessarily possessed the authority to determine whether the foreclosure proceedings should be carried out as originally noticed or if there should be a new and different proceeding had. * * * That order was final, and from it an appeal or other review would lie. It imports finality and under the moratorium law was such. This [the order] still stands as an insurmountable barrier to plaintiff's present claim. Never having been questioned directly, it cannot now be attacked collaterally."

And so here, the jurisdiction of the court was invoked by plaintiff. Within the limits of the moratorium act the court had plenary jurisdiction of the parties and of the subject matter. Let us suppose that the court in the original instance had determined that the moratorium should extend until December 31, 1936, "and no longer" (as was the stipulation in the Bassin case), what would plaintiff's position be? Can there be any doubt that unless the court's jurisdiction was invoked directly to secure a vacation or modification of that order plaintiff's right of redemption would be at an end immediately after the limitation date? In no such man-

ner or form does plaintiff seek relief. Instead it prefers to treat the formal order of the court, in purpose and effect a final judgment, as "beyond the power of the court" to make, as being "in excess of its power and authority," as being "void," and as such "may be attacked collaterally."

The finality and binding effect of a judgment were well stated in Olson v. Dahl, 99 Minn. 433, 438-439, 109 N. W. 1001, 1003, 8 L.R.A.(N.S.) 444, 116 A. S. R. 435, 9 Ann. Cas. 252:

" 'If there be any one principle of law settled beyond all question, it is this: That whenever a cause of action in the language of the law, transit in rem judicatum, and the judgment remains in full force and unreversed, the original cause of action is merged and gone forever.'

"Such is the rule of all the courts, so far as our examination of the authorities has extended. The original cause of action loses its identity and character and is changed and transformed into another cause of action, a judgment, and it can no longer be made the basis of another action." Citing cases.

■ Compromises and compositions between mortgagor and mortgagee are specifically provided for under L. 1935, c. 47, § 3(1), 3 Mason Minn. St. 1936 Supp. § 9633-4(1). That section reads:

"In case the parties to any such foreclosure action shall agree in writing upon terms of compromise settlement thereof, or of composition of the mortgage indebtedness, or both, *the court shall have jurisdiction and may by its order confirm and approve such settlement or composition, or both,* as the case may be." (Italics supplied.)

Is not this exactly what the parties did in the instant case? And where has there been a violation on defendant's part of the terms of stipulation and the order of the court? Plaintiff does not claim there is any; instead it relies upon lack of jurisdiction. Nor does it even suggest anything in the way of mistake, fraud, imposition, or lack of consideration, in point of fact nothing whatever limiting the effectiveness of the stipulated agreement culminating in the finality that goes with a judgment by a court of general jurisdic-

tion. Plaintiff does not even claim that it made an improvident deal when the stipulation was made.

The memorandum of the court is helpful:

"Petitioners indicated at the hearing that they made no claim of overreaching or unfair dealing on the part of the mortgagee. If such claim is made, the court stands ready to hear it and to act accordingly. However, the basis of this decision rests on the fact that no such claim is made."

Needless to repeat, "such claim" was not made to the trial court and necessarily is not made here.

As we have seen, under our law a mortgagor may sell or release his equity of redemption to the mortgagee for a fair consideration. The whole is greater than any of its parts. Granting that premise (as plaintiff must because it is axiomatic), does it not necessarily follow in law (as obviously it must in logic) that he may definitely fix and limit the *additional time beyond that fixed by statute* within which, *after foreclosure,* his privilege of redemption is to end, especially where, as here, the agreement is fairly made and adequately supported as to consideration?

■ Counsel have cited no case holding that a valid judgment as between private parties may be subsequently nullified by legislative enactment. Yet that result would necessarily follow if plaintiff's position were to be sustained. "Where the rights of parties to a contract are settled by a judgment the legislature cannot, by subsequent enactment, change such rights." 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1613; Seastrand v. D. A. Foley & Co. 144 Minn. 239, 175 N. W. 117.

The present record compels the same conclusion as that reached by the trial court; hence the writ is discharged and the order here for review affirmed.